ALBERT W. PROSS and FRANK H. SINGERBEAUX, ETC., Plaintiffs, *v.* EXCELSIOR CLEANING AND DYEING COMPANY, INC., Defendant.

(Municipal Court of the City of New York, Borough of Manhattan, Eighth District, January, 1920.)

Lease — covenants — landlord and tenant — evidence — what are not structural changes — fire escapes.

> Leases are presumed to be made with regard to existing laws and regulations and with respect to such as may be subsequently enacted affecting the subject matter of the contract, and likewise presumed to have been within the knowledge of the parties and intended as part of the agreement.

Municipal Court of New York, January, 1920. [Vol. 110.

While the tenant of a building in the city of New York, who covenants at its own cost and expense to comply with and fulfill all requirements of the municipal or state authorities and of any board, bureau or department thereof, is not obliged to make changes of an extraordinary character or of such a structural nature as to amount to a reconstruction of the building, a further covenant that during the term, the tenant will at its own cost and expense make all repairs, inside and outside, of every nature, the same to be equal in quality and workmanship to the original work upon the premises, is one without limitation, and obligates the tenant to make repairs of almost every conceivable nature not amounting to a reconstruction, but either or both of said covenants include an obligation on the part of the tenant to erect a fire escape as called for by an order of the bureau of fire prevention of the city.

Upon being notified in writing by the chief of the bureau of fire prevention, to provide an outside iron balcony fire escape on the front of the building so as to have it comply with the requirements of subdivision 4 of section 79 B of the Labor Law as far as applicable, the landlords notified the tenant of the order and demanded compliance therewith pursuant to the terms of the lease. The uses to which the premises were to be put were such as rendered imperative the erection of a fire escape. *Held,* that the landlords having complied with the fire order, after the tenant's failure so to do, were entitled to recover the cost of the fire escape and everything incidental and requisite to full compliance with the fire order.

Action for damages for breach of covenants of a lease.

Middlebrook & Borland (Middleton S. Borland, Percy F. Griffin and William D. Smith, of counsel), for plaintiffs.

Samuel A. Langfur, for defendant.

Eder, J. On November 1, 1915, one B. Aymar Sands, as trustee for Helen Akin Powell, entered into an agreement of lease with the defendant, for prem-

ises numbers 232–234 East One Hundred and Twenty-fourth street, borough of Manhattan, city of New York, commencing at noon, on the 1st day of December, 1915, and terminating on the 30th day of April, 1926, at ten o'clock A. M., at the rental therein provided, the former building to be used as a cleaning and dyeing establishment, the latter as a store and dwelling. The defendant, as tenant, entered into possession and continues so to the present time.

The plaintiffs, as substituted trustees, and successors to the original trustee, and landlord, bring this action to recover the sum of $898.06 as damages, for the breach of certain of the covenants of the lease, commonly referred to as the usual repair and departmental clauses.

These provide:

" *Fourth.* That tenant will at its own cost and expense make all repairs, inside and outside of every nature whatsoever during such term, which said repairs shall be equal in quality and workmanship to the original work in the demised premises.

" *Fifth.* That tenant will at tenant's own cost and expense comply with and fulfill all the laws, ordinances and requirements of the City and State of New York, and of any Board, Bureau or Department of said City or State, applicable to said premises."

On July 11, 1917, the chief of the bureau of fire prevention of the fire department of the city of New York, by a communication in writing, dated that day, notified the plaintiffs to make certain changes affecting the leased premises, to have them comply with the requirements of the Labor Law, to wit:

" Provide an outside iron balcony fire escape on the front of building with balconies 4' in width connected by stairways not less than 22" wide, placed at an incline of not more than 45 degrees, extending from

ground to roof, constructed as per Section 79 B-4 of the Labor Law, or carry out a proper alternative method of complying with Section 79 B-1 of the Labor Law.''

Subdivision 4 of section 79 B of the Labor Law, as far as applicable to the present suit, provides:

'' 4. Fire escapes. All outside fire escapes shall be so constructed of wrought-iron or steel and shall be so designed, constructed and erected as to safely sustain on all platforms, balconies and stairways a live load of not less than ninety pounds per square foot with a factor of safety of four. Wherever practicable, a continuous run or straight run stairway shall be used. On every floor above the first there shall be balconies or landings embracing one or more easily accessible and unobstructed openings at each floor level, connected with each other and with the ground by means of a stairway constructed as hereinafter provided and well fastened and secured. All openings leading to outside fire escapes shall have an unobstructed width of at least two feet and an unobstructed height of at least six feet. Such openings shall extend to the floor level or within six inches thereof, shall be not more than seven inches above the floor of the fire escape balcony, shall have metal frames or frames covered with metal and be provided with doors constructed of fireproof material and with wired glass where glass is used, except in cases where fire escapes are hereafter erected on buildings constructed prior to October first, nineteen hundred and thirteen, of five stories or under in height, in which cases the provisions of subdivision five as to the use of steps to connect with the fire escapes and as to the construction of openings leading to fire escapes shall apply. All windows opening upon the course of the fire escape shall be fireproof windows.''

Plaintiffs notified the defendant of the order thus received, and demanded that it comply therewith, pursuant to the terms of the lease. Upon defendant's default and failure to do so, plaintiffs themselves proceeded to, and did comply with the aforementioned fire order, at a cost of $797. Plaintiffs' claim is composed of two items, *i. e.,* (1) For $101.06, for various charges paid to the department of water supply, gas and electricity (conceded by defendant to be due); (2) For the above sum of $797, from which plaintiffs concede should be deducted an item of $35 for architect's services, leaving a total claim of $863.06.

The crux of the whole case lies in the construction of the covenants of the lease, hitherto mentioned, plaintiffs asserting that the requirements of the fire order are fully comprehended within these terms of the lease, and therefore, the expense of meeting same devolved upon defendant, while defendant asserts, with equal force, that they are of such an extraordinary nature as to amount to *structural* changes, and therefore, as a matter of law, are not within the duties and obligations assumed by defendant, as tenant, under these provisions of the lease.

If the provisions of the lease are broad enough to include an obligation by the defendant, as tenant, to make the changes called for by the fire order, there can be no question of the right of plaintiffs to recover the moneys which they expended in order to comply with the demands of the order. *Williamsburgh Power Co.* v. *Shotten,* 97 Misc. Rep. 716; *Seymour* v. *Picus,* 9 id. 48.

The defendant vigorously maintains that the changes necessitated by the fire order involved structural and extraordinary changes, and that they are such as were not contemplated to be borne by the defendant, as tenant, under any reasonable interpreta-

tion of these clauses. I am unable to concur in this view. The fire order required the erection of fire escapes. It is true that the fire order uses the phrase, '' structural changes,'' but the language thus employed is of no moment, as evidence of the actual effect of the change. The actual effect of the requirements is still a matter for determination by the court, in conjunction with the terms of the lease itself.

Courts are loathe to extend provisions of this character beyond their legitimate sphere, and are in thorough concord that they should be limited in their scope, so that they have been held not to include a *structural* change (*Herald Square Realty Co.* v. *Saks & Co.,* 215 N. Y. 427), or *extraordinary* and unforeseen building alterations (*May* v. *Gillis,* 169 N. Y. 330), or such as would be tantamount to a *reconstruction* of the building itself. *Warrin* v. *Haverty,* 159 App. Div. 840.

As in other cases of contract, these provisions, however onerous, must receive a reasonable construction, *e. g.,* such as will fairly and substantially carry out the intention of both parties. All contracts are presumed to be made with regard to existing laws and regulations, and with respect to such as may be subsequently enacted, affecting the subject matter of the contract, and are likewise presumed to have been within the knowledge of the parties and contemplated and intended as part of the agreement itself. *Deutsch* v. *Hoe Estate Co., Inc.,* 174 App. Div. 685.

The defendant agreed to, at its '' own cost and expense, comply with and fulfill all requirements of the City and State of New York, and of any Board, Bureau or Department of said City or State, applicable to said premises.'' Defendant also agreed that it would, '' at its own cost and expense make all repairs, inside and outside of every nature what-

soever during said term, which said repairs shall be equal in quality and workmanship to the original work in the demised premises.''

The bureau of fire prevention is an adjunct to the fire department of the city of New York (Greater N. Y. Charter, § 727), and is one coming within the purview of the terms of the lease. Its requirements were, therefore, to be complied with and fulfilled, as fully to all intents and purposes, as if ordered by the fire department itself. But upon whom does the burden fall? It is well settled that under a clause of the former character, the tenant is not obliged to make changes of an extraordinary character, or of such a structural nature, as to amount to a reconstruction of the building itself. As to the latter provision, respecting repairs, it appears to be one *without limitation,* and would seem to fasten upon the defendant, the burden and obligation of making repairs of almost every conceivable nature, not amounting to a reconstruction. It seems to be almost limitless in its scope and operation, but whatever interpretation may be given it, I think either or both of these provisions include an obligation on the part of the defendant, as tenant, to erect a fire escape, as called for by the fire order.

What is or amounts to a *structural* change is not easy of definition. The term is elastic. In a sense, a fire escape or stairway is a structure; so, also, is a stepladder, a post or a fence. By *structural* change in cases of this character, I believe is meant such a change as to affect a vital and substantial portion of the premises; as would change its characteristic appearance; the fundamental purpose of the erection; or the uses contemplated, or a change of such a nature, as would affect the very realty itself, extraordinary in scope and effect, or unusual in expenditure.

Municipal Court of New York, January, 1920. [Vol. 110.

My impression is that the erection of a fire escape does not amount to a structural or extraordinary change, or come within that category. Certainly it does not amount to a reconstruction of the building itself. Nor does it involve unusual expense.

A *fire escape* has been defined to be "An *apparatus* constructed to afford a safe and convenient method of escape from a burning building." 1 Bouvier's L. Dict. (Rawle's Rev. 1897), 790. "A *contrivance* or apparatus on a building to enable the occupants to escape without injury in case of fire." 19 Cyc. 564, citing Eng. L. Dict.

The erection of such an apparatus or contrivance cannot, I think, be classed as a *structural* change; at least not such as to exempt the tenant from liability under such provisions of a lease. *Harder Realty & Const. Co.* v. *Lee,* 74 Misc. Rep. 436; *Jacobs* v. *McGuire,* 77 id. 119.

The uses to which the premises were to be put were such as rendered imperative the erection of the fire escape, and I think it must be held that it was reasonably contemplated and intended by the parties, by the provisions alluded to, that they should include an obligation and assumption by the tenant to meet and fulfill all demands of the municipal or state authorities, regarding the premises, occasioned by its intended, stipulated and actual use. *Gregory* v. *Manhattan Briar Pipe Co.,* 174 App. Div. 106; *Jacobs* v. *McGuire, supra; People* v. *Shevitz,* 177 App. Div. 565.

All of the cases cited by the learned counsel for the defendant are, I think, clearly distinguishable by the fact that they involved structural changes or extraordinary alterations, a feature not present in the instant suit.

As I recall the facts with respect to the erection of the fire escape, the cost of its construction was $462,

and plaintiffs also proved by the testimony of the fire department inspector that the fireproofing of the windows was necessary to compliance with the fire order issued. This involved an additional outlay of $300. Defendant contends that the plaintiffs may not recover this amount, because this item was not specifically mentioned in the fire order, but I think plaintiffs are entitled to recover it. While the item is not specifically referred to, the order required the fire escape to be "constructed as per section 79 B-4 of the Labor Law," and this provision of the Labor Law, which deals with the erection of fire escapes, among other things requires that "All windows opening upon the course of the fire escape, *shall be fire proof windows.*"

The undisputed testimony of the fire department inspector is that the fireproofing of the windows was necessary to compliance with the fire order, and it is my conclusion that compliance with the fire order necessarily included everything *incidental* and *requisite* to full and complete and actual compliance with it.

Plaintiffs are, therefore, entitled to judgment for the sum of $863.06.

Judgment for plaintiffs.