WALL NUT PRODUCTS, INC., Respondent, *v.* RADAR CENTRAL CORPORATION, Appellant.
RADAR CENTRAL CORPORATION, Appellant, *v.* WALL NUT PRODUCTS, INC., et al., Respondents.

First Department, December 17, 1963.

*Herbert Plaut* of counsel (*Scribner & Miller,* attorneys), for appellant.

*Isidore Lapan* for Wall Nut Products, Inc., respondent.

STEVENS, J. On October 30, 1950, Radar Central Corporation (Radar) as lessor entered into a 30-year lease with Wall Nut Products, Inc. (Wall Nut) as lessee. Federal Nut Co., Inc. (Federal) executed an instrument of guarantee of performance. The lease permitted, or required, certain alterations by the tenant which were completed in 1951. The lease, in part, provided: "Except as hereinabove expressly provided, the lessee may make any alteration in any building now or hereafter upon the premises without the written consent of the lessor, except that, without such consent, the lessee may not make alterations

involving *structural* changes  *  *  *  No consent to any work of construction or reconstruction shall be deemed to include a consent to remove *or alter the exterior* or any supporting wall or column or pier or to change the level of any floor, ceiling or roof;'' (emphasis supplied). Any such consent, to be effective, was required to be in a separate written instrument.

The leased premises are known as 423–425 Lexington Avenue, and 132 East 44th Street, in the Borough of Manhattan.

On or about June 30, 1962, Wall Nut purchased premises 126–128–130 East 44th Street, adjacent to the leased premises. Thereafter and on or about May 17, 1963, plaintiff Wall Nut sought permission of Radar to make certain changes in the leased premises. Such changes, from the complaint, consisted " of the removal, on each of the second, third and fourth floors, of two windows and the brickwork immediately beneath said windows." These changes were designed to afford ready access to and passage from a building constructed, or to be constructed, on the adjacent premises. The proposed plans and specifications were forwarded to Radar which refused to approve them or consent to the change. Radar asserts the plans, as shown, included also the bricking up of present windows, on the second, third and fourth floors. After Radar refused, considering the proposed alterations structural in nature, Wall Nut sought a declaratory judgment declaring its right to make the changes and Radar's refusal unjustified, and an injunction restraining Radar from interfering with the requested alterations.

It is from the order granting Wall Nut's motion for summary judgment, and also with respect to the counterclaim, that this appeal is taken.

Simply stated, the question is — Are the proposed alterations forbidden by the terms of the lease, unless the written consent of Radar is first obtained? In our view they are.

The lease plainly forbids not only structural changes but alterations to any exterior wall without the written consent of the lessor. The changes contemplated obviously refer to and include the exterior wall. The fact that a zoning resolution might characterize the changes as an " incidental alteration " are of little weight and less significance here. So on this provision of the lease alone there can be no question that the proposed change requires consent.

A structural change or alteration is " such a change as to affect a vital and substantial portion of the premises, as would change its characteristic appearance; the fundamental purpose of the erection; or the uses contemplated, or a change of such a nature, as would affect the very realty itself, extraordinary in

scope and effect, or unusual in expenditure." (*Pross* v. *Excelsior Cleaning & Dyeing Co.*, 110 Misc. 195, 201; *Sanka Coffee Corp.* v. *Ramcadis Realty Corp.*, 136 Misc. 919, affd. 233 App. Div. 653; cf. *Cohen* v. *Margolies*, 192 App. Div. 217; *Herald Sq. Realty Co.* v. *Saks & Co.*, 215 N. Y. 427.)

In the original plans filed by plaintiff's architect the proposed four-story structure (later amended to propose a one-story structure with foundations designed to carry a future additional 3 floors) to be erected by plaintiff is referred to as an " extension " of the leased premises. The original estimated cost of alteration was $150,000, later amended to $40,000. The building to be erected would depend for certain services, i.e., elevator and washroom, upon the facilities of the Radar structure. The nature and extent of the proposed alterations were such that they required the filing of plans and specifications, would extend the uses beyond that to which they would ordinarily be put, and certainly result in some change in the appearance of the building (cf. *Robinson* v. *Globe Ind. Co.*, 251 App. Div. 288; cf. *Chamberlain* v. *Childs' Unique Dairy Co.*, 53 Misc. 371). Such changes involved alterations of a structural character.

There is no provision in the lease binding Radar to consent, nor even a provision that consent to structural changes shall not be unreasonably or arbitrarily withheld. Thus, once it is concluded that the proposed alterations are structural, the withholding of consent is discretionary with Radar (cf. *Dress Shirt Sales* v. *Martinique Associates*, 12 N Y 2d 339).

The order appealed from should be reversed on the law, and judgment should be granted to defendant landlord, with costs.

BREITEL, J. P., EAGER, STEUER and WITMER, JJ., concur.

Order, entered on September 10, 1963, unanimously reversed on the law, with $20 costs and disbursements to appellant, and judgment granted to defendant landlord.