KENNETH P. WILLIAMS et al., Appellants-Respondents, v RON-JAY ENTERPRISES, INC., Respondent-Appellant. (Action No. 1.)

RON-JAY ENTERPRISES, INC., Respondent-Appellant, v KENNETH P. WILLIAMS et al., Appellants-Respondents. (Action No. 2.)

Fourth Department, December 15, 1978

APPEARANCES OF COUNSEL

*Nottingham, Paltz, Cerio & Engel (Bond, Schoeneck & King,* by *Thomas E. Myers,* of counsel), for appellants-respondents.

*MacKenzie, Smith, Lewis, Michell & Hughes (Kevin M. Reilly* of counsel), for respondent-appellant.

## OPINION OF THE COURT

MARSH, P. J.

This is an appeal by plaintiffs in Action No. 1 and defendants in Action No. 2 from a judgment of Supreme Court, and by defendant in Action No. 1 and plaintiff in Action No. 2 from certain portions of the same judgment.

Plaintiffs Kenneth P. Williams and Mary E. Williams (hereinafter referred to as Williams) commenced Action No. 1 against defendant in the first action Ron-Jay Enterprises, Inc. (hereinafter referred to as Ron-Jay) by order to show cause accompanied by a temporary restraining order, which restraining order forbade Ron-Jay from altering the cellar of certain leased premises at 5076 Velasko Road, Syracuse. The complaint by Williams seeks to permanently enjoin Ron-Jay from remodeling premises owned by Williams and leased to Ron-Jay pursuant to a one-year written lease. A specific prohibition is sought against the construction of a rathskeller in the basement of the leased premises. Ron-Jay counterclaimed seeking the removal of structures placed by Williams on the leased premises, seeking declaration of a right under the lease to erect a dividing line between the leased premises and adjoining premises owned by the Williamses and a declaration that under the lease Ron-Jay could make nonstructural modifications to the cellar of the leased premises transforming it into a rathskeller. In an amended complaint Williams sought additionally to restrain Ron-Jay from blocking an entranceway from Velasko Road onto the leased premises by striping it for patron parking, which entranceway permits cars to cross over the leased premises and onto Williams' adjacent property which is used as Shady Brook Shopping Plaza.

In Action No. 2 plaintiff Ron-Jay obtained a temporary restraining order against defendant Williams prohibiting the removal of cars belonging to employees and customers of Ron-Jay with respect to the restaurant, known as MacDuff's, being operated on the leased premises, which cars were parked in

the parking lot of the Shady Brook Shopping Center owned by Williams adjacent to the leased premises. The complaint in Action No. 2 seeks to enjoin Williams from removing from the Shady Brook Shopping Center parking lot vehicles belonging to employees and patrons of Ron-Jay's restaurant. A prohibition is also sought against tampering with said vehicles, engaging in verbal abuse of patrons of MacDuff's and depositing broken glass in front of the entrances to MacDuff's Restaurant. Action No. 1 and Action No. 2 were ordered to be jointly tried.

Plaintiff Kenneth Williams testified that he purchased a parcel of land on March 17, 1953, known as 5076 Velasko Road, hereinafter referred to as Parcel No. 1, upon which was situated a restaurant known as the Velasko Inn. There were a restaurant operated on the first floor and apartments on the second. He operated the Velasko Inn restaurant as a one-floor operation. The parcel and the inn were located on the corner of Velasko Road and McDonald Road with approximately 211 feet frontage on McDonald Road and 350 feet on Velasko Road and with an irregular rear southerly boundary running northeasterly into the center of the property approximately 170 feet, then southeasterly approximately 108 feet, giving an effective depth to the parcel from both McDonald Road and Velasko Road of a little over 200 feet. Williams operated the restaurant until 1975.

On February 14, 1961 Williams purchased the adjoining parcel, hereinafter referred to as Parcel No. 2, consisting of vacant land fronting on McDonald Road and later used as a site for the Shady Brook Shopping Plaza located at 4800 McDonald Road. Williams blacktopped the area surrounding the Velasko Inn in 1954. In 1974 he blacktopped the area of the parcel purchased in 1961 and also repaved the blacktopped area on the Velasko Road parcel east of Velasko Inn. From 1953 until 1975 the Velasko Inn was serviced by a driveway approximately 10 feet south of the inn, entering from Velasko Road, and a drive about 75 feet east of the inn entering from McDonald Road.

The parcel purchased in 1961 remained vacant land until 1974 when it was blacktopped and two structures were erected. One structure housed a small grocery store, a liquor store, a beauty shop and a sewing center and the other structure was located within a few feet of Parcel No. 1 in the southwesterly corner of the 1961 parcel. The smaller structure

located in the southwesterly portion of Parcel No. 2 is used as an ice cream store operated by the Williamses. Another structure was completed in 1976 on Parcel No. 2 consisting of a fabric store and two apartments above. In 1975 pavement markings were placed on the premises to the side and rear of the inn on Parcel No. 1 and on Parcel No. 2 there were white stripes for parking in front of the ice cream store and on the remainder of Parcel No. 2 yellow stripes and also yellow stripes for delineation of parking on Parcel No. 1. From 1954 to 1974 parking for the inn was confined to Parcel No. 1. Parcel No. 2 although purchased in 1961 remained a vacant lot until 1974. Following the completion of Shady Brook Shopping Center access was obtained to it by a 25-foot entrance from McDonald Road directly onto Parcel No. 2, a 25-foot entrance from McDonald Road to Parcel No. 1 and the entranceway running from Velasko Road 10 feet behind the inn on Parcel No. 1 over to Parcel No. 2.

On November 7, 1975 Ron-Jay Enterprises, Inc. executed a purchase offer for all the fixtures, stock and trade, inventory and good will of Velasko Inn for $25,000 and providing for a 10-year lease of Velasko Inn at $700 per month, which would cover the entire premises situated at 5076 Velasko Road. A lease was also executed on the same day providing a 10-year duration with two five-year options to renew with an additional right of first refusal for purchase of the real property. Ron-Jay went into possession on February 1, 1976. Plans were discussed orally with Ron Skalko, president of Ron-Jay, for renovation of the premises. Williams verbally agreed with Skalko to permit replacing the flooring on the second floor and fixing a new entrance between the small and larger rooms on the second floor. With respect to the first floor it was orally agreed to permit construction of a wrap-around bar and fireplace. There was discussion of a rathskeller for the basement, but consideration of this was put off until a future date. Williams also verbally authorized construction of a stairway from the first to the second floor and a vestibule. The question of where Ron-Jay's customers would park was not specifically addressed by the parties. In June, 1976 the problem arose as to the extent of inn customer parking on Parcel No. 2. Williams suggested that they put parking stripes around the west side of the inn. There was no clear demarcation between the Parcel No. 1 and Parcel No. 2.

Theordore Furtch testified that he drew the purchase offer

and lease for the Williams and for Ron-Jay, the principals of which were Ronald Skalko and Joseph Downs. It was a clear understanding of Furtch as attorney that the lease covered the inn and real estate which comprised Parcel No. 1, the 1953 purchase by the Williamses and that it was not intended to extend beyond it. Parcel No. 1 was contained in a separate deed, had a separate abstract, was taxed separately and was discussed by the parties as a distinct parcel. Furtch recalled no conversation with respect to parking.

■ The decision of the Trial Justice concludes that the lease between Williams and Ron-Jay by implication grants to Ron-Jay the right to use the blacktopped parking area of both Parcel No. 1 and Parcel No. 2. We disagree with that determination. The attorney for both parties testified that the negotiation dealt exclusively with the realty encompassed within Parcel No. 1 which was separately taxed, covered by a separate abstract, purchased separately and used exclusively for the Velasko Inn over a 20-year period. Other aspects of the lease also tend to favor a construction which finds the demised premises covered by the lease to be the Velasko Inn and the real property contained in Parcel No. 1. The lease to the tenants in the Shady Brook Shopping Plaza provides for snow plowing of the parking areas by the landlord whereas Williams struck that provision out of the lease with Ron-Jay. A very significant factor is the right to purchase the real property, the subject matter of the lease contained in paragraph 17.

This would be an amorphous right very difficult to enforce by specific performance should it not be found that the lease covered the specific area of Parcel No. 1. It is highly improbable that it had reference only to the realty immediately beneath the Velasko Inn (now MacDuff Inn). Both parties in their briefs on appeal appear to be in agreement that Parcel No. 1 is the subject of the lease, not merely the Velasko Inn. This is in complete accord with the testimony of the attorney Furtch who drafted the lease.

The lease contemplates exclusive possession of the demised premises in the lessee. The rights and duties of the lessor and lessee are contained within the lease itself and nothing therein detracts from the exclusive use and possession of the demised premises (Parcel No. 1) with respect to parking, ingress and egress (cf. *Wall Nut Prods. v Radar Cent. Corp.*, 20 AD2d 125). There is no factual support for the implication of

an easement in favor of the landlord over the demised premises from Velasko Road to the Shady Brook Shopping Plaza, Parcel No. 2 *(Heyman v Biggs,* 223 NY 118; *McQuinn v Tantalo,* 41 AD2d 575).

As to the court's determination with respect to the maintenance of a garbage hut for their convenience on the leased premises, the lease covers the entire premises encompassed within Exhibit 1, the 1953 deed. There is no authority in the lease which may run for the maximum of 20 years for such a use; hence continued use by the lessor should be enjoined.

■ While the lease provides that no alteration or improvement shall be made without the prior written consent of the lessor, the testimony with respect to the alterations made to the basement of the restaurant indicates that they are reasonably necessary for the efficient use of the demised restaurant premises. Some shelving was removed in order to place a support beam to guard against sagging of the first floor. This support beam also had vertical supports which required some drilling into the concrete of the basement. Lessor Kenneth Williams appears to concede the necessity of the support beam. A ventilation pipe to ventilate the cellar was apparently installed through to the exterior, a furnace was moved, as were a hot water heater and water softener. The removal of the hot water heater and softner was authorized by Kenneth Williams.

We agree with the statement of the court in *N. & S. Decor Fixture Co. v V. J. Enterprises* (57 AD2d 89): "We hold that the rack is a trade fixture and, as such, is not violative of the lease. 'Nonstructural alterations necessary to carry on a tenant's business may be made without the landlord's consent. This is true even where the lease requires that no alterations may be made without the landlord's consent; provided, however, that such alterations will not injure the reversion, and provided, further, that they are reasonably necessary to enable the tenant to use the premises in the manner set forth in the lease'."

The restructuring of the stairway to the basement was approved by Williams prior to the modification of the lease on August 26, 1976; hence, Williams is estopped from claiming a violation of the lease for that reason *(N. & S. Decor Fixture Co. v V. J. Enterprises, supra;* cf. *Rumiche Corp. v Eisenreich,* 40 NY2d 174).

The record is not sufficiently clear to pass upon the validity

of proposed renovations as to their structural nature and whether they are reasonably necessary for the use of the premises and the business of the lessee. Ron-Jay, the lessee, has failed to establish adequately the nature of the proposed plans; hence, no determination can be made that they are permissible and reasonably necessary for the business and nonstructural changes.

The judgment appealed from should be modified by deleting the first four ordering paragraphs except insofar as by the first ordering paragraph the action by Kenneth P. and Mary E. Williams to permanently restrain Ron-Jay Enterprises, Inc. from constructing, renovating or altering the cellar or other portions of the leased premises is dismissed, and further declaring (1) the parcel acquired by the plaintiffs Kenneth P. Williams and Mary E. Williams in 1953 is exclusively leased to defendant Ron-Jay Enterprises, Inc., subject to the terms and conditions of the lease entered into by and between the parties, (2) that no parking rights exist in favor of defendant Ron-Jay Enterprises, Inc. over the property acquired by plaintiffs Kenneth P. Williams and Mary E. Williams on McDonald Road in 1961, (3) that no right of access exists in favor of the owner and occupants of the parcel acquired by the Williamses in 1961 from Velasko Road over the parcel acquired by them in 1953 and leased to Ron-Jay Enterprises, Inc., (4) that no right exists to place or use any structure on the leased premises by plaintiffs, Kenneth P. Williams and Mary E. Williams, (5) that those renovations to the cellar of the leased premises accomplished at the date of trial are permissible under the lease and (6) that no determination is made as to whether the proposed alterations are permissible under the lease, and as so modified, affirmed.

MOULE, SIMONS, SCHNEPP and WITMER, JJ., concur.

Judgment unanimously modified, on the law and facts, and as modified, affirmed, without costs in accordance with opinion by MARSH, P. J.