HARAR REALTY CORP., Respondent, v MICHLIN & HILL, INC., Appellant, and JOHN DOE, Respondent.

First Department, April 15, 1982

### APPEARANCES OF COUNSEL

*Barry I. Slotnick* of counsel (*Silverman & Shulman, P. C.,* attorneys), for appellant.

*Thomas C. Lambert* of counsel (*Goldfeld, Charak & Ross* attorneys), for respondent.

### OPINION OF THE COURT

SULLIVAN, J.

Petitioner is the net lessee of the premises at 44 West 56th Street where, utilizing the first two floors, it operates a restaurant. Its lease with R.S.N. Projects, Inc., the owner of the building, provides that the tenant may make alterations, if performed in a workmanlike manner and in accor-

dance with plans and specifications which must be submitted to the landlord for approval if the cost estimate is more than $5,000, and in any event must be filed with and approved by the appropriate governmental authority before any work is commenced.

On February 21, 1978, petitioner leased the third and fourth floors to respondent Michlin & Hill, Inc., a producer of advertising jingles, for a 10-year term at a monthly rental of $2,000 for the first five years and $2,200 the last five years, under a lease which provided that Michlin could not make any alterations without petitioner's prior written consent. The lease provided that the demised premises were to be occupied for "general publishing, record production, and advertising, commercial production activities, personnel management and booking agency activities and general allied areas in the entertainment industry, and general office purposes."

Because the third and fourth floors had not been occupied for some time and were in a state of such disrepair as to require extensive renovation, petitioner agreed to a three and one-half month rent abatement. A witness described the conditions — "The third and fourth floor looked like a tenement that hadn't been lived in in about 20 years. The walls and ceilings and floors were all corroded, if there at all. The electricity wasn't working. There was glass broken everywhere. Basically it was a mess, and it needed complete renovation on our part." Renovations were immediately commenced without the submission of any plans, and by May of 1978, Michlin had spent approximately $55,000 in replacing walls, ceilings and floors, and installing new windows.

Thereafter, sometime between October and December of 1978, Michlin installed a metal spiral staircase between the third and fourth floors, prompting petitioner, on April 25, 1979, through its attorney, to complain, in writing, that Michlin had made structural changes without seeking prior approval or filing any plans with the Department of Buildings, and to request a meeting to discuss the matter. Apparently, the parties were unable to resolve their differences and on January 31, 1980 petitioner, citing only the installation without the landlord's permission, served a

notice to cure, demanding that the staircase be removed within five days. When Michlin failed to comply petitioner served a notice terminating the tenancy, effective February 22, 1980. This holdover proceeding was thereafter commenced.

At trial petitioner established that Michlin had never sought permission to construct a stairway and that plans for the stairway were not submitted until after it had been installed. An issue of fact was raised as to whether Arthur James, petitioner's secretary, who, concededly, was present in the restaurant from approximately 9:00 A.M. to 10:00 P.M., six days a week, knew of the stairway before its installation had been completed. James admitted that with knowledge that building plans had not been submitted for any of the renovations, he not only was aware that renovations were underway but had indeed inspected the premises while work was in progress. He testified, however, that the stairway was not installed until after completion of the repairs to the floor, walls and ceilings, and that only when he made a later inspection and observed three cut beams was he told that a stairway was being installed. He immediately authorized service of a notice to cure. James conceded that petitioner continued accepting rent after learning about the stairway.

On the other hand, Arline Ackerman, Michlin's president, testified that she saw Mr. James at the premises while the stairway was being installed and that he voiced no objection. The carpenter who constructed the stairway confirmed Ackerman's testimony that James was present during its installation. In fact, the carpenter testified that when James asked him what he was doing, he replied, "Building a staircase." Ackerman further testified that the building permit application was completed and presented to James for his signature before service of the notice to cure. According to Ackerman, James refused to sign and advised Michlin to send the documents to his lawyer. She also testified that until the stairway was installed the only means of passage between the third and fourth floors was by a fire stairway.

The parties stipulated that the stairway was installed in a workmanlike manner. An architect called by Michlin

testified that the floor structure at the site of the stairway could not only be restored to its original condition but would provide greater support than before. He further testified that a fair and reasonable charge for the stairway's installation was $3,500, and that the stairway could be removed and the three beams restored for approximately $1,000.

Civil Court (RIBAUDO, J.) dismissed the petition and counterclaims, and both parties appealed. Appellate Term, finding that Michlin failed to obtain petitioner's consent and that the installation of the stairway constituted a material alteration of the premises in violation of the lease, modified Civil Court's order to the extent of reversing so much of it as dismissed the petition, and awarded a final judgment of possession to petitioner. We granted leave to appeal. The only issue is the award of possession to petitioner. We believe that it was error to find that the installation of the staircase constituted a material breach of the lease entitling petitioner to possession, and thus reverse and reinstate the order of the Civil Court.

The rule is well established that a lease confers "the use, not the dominion of the property demised" and that "[t]he power of making an alteration does not arise out of a mere right of user" (*Agate v Lowenbein,* 57 NY 604, 607). Thus, a tenant may not, without the consent of the landlord, make material changes or alterations in the demised premises. (*Agate v Lowenbein, supra,* p 608; *Cohen v Simon Strauss, Inc.,* 139 NYS 929.) Any alteration which materially injures the landlord's reversionary interest, or materially changes the nature and character of the demised premises constitutes waste. (*Lyon v Bethlehem Eng. Corp.,* 253 NY 111, 113; *Andrews v Day Button Co.,* 132 NY 348, 353.)

The breach of a covenant not to make alterations is a substantial violation of the lease. (*Rumiche Corp. v Eisenreich,* 40 NY2d 174, 178; *Andrews v Day Button Co., supra,* p 353; *Agate v Lowenbein, supra,* p 607.) Under a lease which provides that alterations may not be made without the landlord's consent, such consent may be withheld, even arbitrarily, where the contemplated alterations are structural. (*Wall Nut Prods. v Radar Cent. Corp.,* 20 AD2d 125.) A lease provision that a tenant may not make alterations

without the landlord's consent is, however, "only an undertaking imposed by law, which is to the effect that any material and substantial change or alteration of the nature of the property is. waste." (*Andrews v Day Button Co., supra,* p 353, citing *Agate v Lowenbein, supra.*) Thus, a tenant "is at liberty to erect structures for the purpose of carrying on his legitimate business upon the demised premises and remove them within the term, unless the effect will be to commit waste or to do serious injury to the realty." (*Andrews v Day Button Co.,* 132 NY 348, 353, *supra,* and cases cited therein; see, also, 1 Rasch, New York Landlord and Tenant [2d ed], § 455, p 577.) This is true even where, as here, the lease has a provision that alterations may not be made without the landlord's consent. (*N. & S. Decor Fixture Co. v V. J. Enterprises,* 57 AD2d 890; *Klein's Rapid Shoe Repair Co. v Sheppardel Realty Co.,* 136 Misc 332, affd *sub nom. Klein's Rapid Shoe Repair Co. v 120-122 East 14th St. Corp.,* 228 App Div 688.)

This case turns, therefore, on whether the installation of the spiral stairway materially changed the nature and character of the demised premises so as to constitute waste. A subsidiary question is whether the stairway was necessary for the purposes of Michlin's business. Resolution of these issues dictates examination of the circumstances in which the alteration was made. (See *Matter of Park East Land Corp. v Finkelstein,* 299 NY 70, 74.) At the time Michlin took possession the third and fourth floors were not fully adapted for their intended use as an office or, for that matter, any other use. Even after expending $55,000 in renovating the walls, ceilings and floors and installing new windows just to make the premises habitable, Michlin found that its employees and clients had to use a fire stairway in moving between the third and fourth floors. Had Michlin's president, Ackerman, been permitted she would have testified, in conformity with Michlin's affirmative defense, that petitioner had sealed and locked the third floor elevator entrance as a security measure and that the fire stairway was unsafe because of poor illumination and accumulated debris. Unfortunately, the trial court would not permit this testimony, which was relevant and material. Nevertheless, the record establishes the need for

the spiral stairway as a means of facilitating access between the third and fourth floors.

The facts presented herein differ from those in *Freehold Invs. v Richstone* (69 Misc 2d 1010, revd 72 Misc 2d 624, revd 42 AD2d 696, revd 34 NY2d 612), upon which Appellate Term relied. There, the tenant had replaced a series of wall cabinets in the kitchen, and installed recessed lighting fixtures with false bulkheads which could not be removed without damage to the property. Unlike *Freehold,* an "attitude of personal preference and vagarious choice in arbitrary interior reconstruction and redecoration" is not involved here. (72 Misc 2d, at p 625.) What is at issue is a tenant's attempt to complete a substantial renovation — which its landlord had permitted without objection — to make the premises usable in the manner contemplated by a lease executed eight months earlier.

The Court of Appeals considered the issue of whether an alteration constituted waste in *Rumiche Corp. v Eisenreich* (40 NY2d 174, *supra*), albeit in the context of a landlord's efforts to evict a rent-controlled residential tenant pursuant to subdivision a of section 52 of the Rent and Eviction Regulations,[*] rather than, as here, under a lease provision. The court held that "[i]t is the impingement upon the ultimate estate of the landlord which is the keynote to the definition of waste" (*supra,* p 179, citing 1 Rasch, New York Landlord and Tenant [2d ed], § 455). Quoting from *Pross v Excelsior Cleaning & Dyeing Co.* (110 Misc 195, 201), the court defined the type of alteration which would justify eviction as: "[S]uch a change as to affect a vital and substantial portion of the premises, as would change its characteristic appearance; the fundamental purpose of the erection; or the uses contemplated, or a change of such a

---

[*] Subdivision a of section 52 of the Rent and Eviction Regulations, in pertinent part, provides:

"[A]n action or proceeding to recover possession of any housing accommodation shall be maintainable * * * upon one or more of the following grounds:

"a. The tenant is violating a substantial obligation of his tenancy other than the obligation to surrender possession of such housing accommodation and has failed to cure such violation after written notice by the landlord that the violation cease within 10 days; or within the 3 month period immediately prior to the commencement of the proceeding, the tenant has wilfully violated such an obligation inflicting serious and substantial injury upon the landlord".

nature, as would affect the very realty itself, extraordinary in scope and effect, or unusual in expenditure."

In *Rumiche (supra)*, the tenant had repaired the ceiling, installed a light fixture and built a closet and window frame. The Court of Appeals considered the ready removability of the installations to be significant and found (40 NY2d, at p 180) "insufficient proof of any repair or alteration which could be characterized as one causing permanent or lasting injury to the premises."

Indeed, viewed against the criteria set forth in *Pross,* the factors militating against a finding of waste are as compelling here as in *Rumiche.* Petitioner is unable to show any permanent or lasting injury to the building or its reversionary interest. The landlord has objected only to the stairway, which, in view of the commercial nature of the lease, was installed for a modest sum, $3,500, and can be removed and the premises completely restored for the relatively small sum of $1,000. The staircase, described as being four feet in diameter, supported by a steel pole bolted to the base of the floor and braced at the walls, affects an insubstantial portion of the demised premises and does not change its appearance or purpose or contemplated use.

In *William v Ron-Jay Enterprises* (65 AD2d 213) the Fourth Department found that alterations consisting of the removal of shelving in order to place a support beam and vertical supports which required drilling into the basement's concrete floor as well as the installation of a ventilation pipe extending through to the building's exterior were reasonably necessary for the tenant's use of the premises, and therefore not violative of a lease provision prohibiting any alterations without the prior written consent of the landlord.

As a general rule, the law will not sanction a forfeiture of possession where no substantial injury occurs or where a mere technical breach of the lease is involved. (*Fly Hi Music Corp. v 645 Rest. Corp.,* 64 Misc 2d 302, affd 71 Misc 2d 302; *Nathan's Famous v Frankorama, Inc.,* 70 Misc 2d 452, 455-456.) In *Fly Hi,* the tenant installed a new stairway, kitchen and raised platform for which he subsequently filed plans which were initially rejected but finally

approved. In the interim a Department of Buildings violation had been issued because the alteration had been undertaken without a permit. In refusing to evict on the basis of the tenant's failure to cure the violation, the court noted (64 Misc 2d, at p 304): "Justice demands that in the case at bar the landlord should be made whole and the tenant should not be subjected to an unreasonable forfeiture. The circumstances disclose the work had been long completed although there was a technical nonhazardous violation consisting of a failure to file approved plans for a permit. Clearly, the work done represents an improvement to the premises and enhances its value."

Here, in reliance on a long-term lease, Michlin made substantial renovations at an expenditure of approximately $55,000 on premises which, prior to the renovations, had been uninhabited and uninhabitable. Petitioner concededly permitted the repairs to be made without its written approval. Testimony was offered that it became aware of the stairway even before installation had been completed and that it failed to take any action for at least four months. This proceeding was commenced just two years after the lease was executed and after completion of all the major renovations. To allow petitioner to regain possession of premises which have been substantially improved and the value of which has obviously been enhanced at a cost borne solely by Michlin would work a great injustice and result in a windfall to petitioner.

Nor is the lack of consent by the owner a factor, even if a structural alteration were involved, since approval is required only where the estimated cost of the alteration is over $5,000. Here, the stairway was installed for $3,500, and could be removed for approximately $1,000. While the filing and approval of plans by the appropriate regulatory agency were also required under the net lease, the notice to cure was limited to lack of permission by the landlord.

In view of our determination that the installation of the spiral stairway constituted a nonstructural alteration which was undertaken out of necessity to carry on Michlin's business and which, therefore, did not require consent, we need not reach Michlin's other contention that petitioner waived its right to claim breach because of its

silence, coupled with the acceptance of rent, after allegedly learning of the installation of the stairway.

Accordingly, the order, Supreme Court, Appellate Term, First Department, entered June 17, 1981, which reversed in part an order of the Civil Court of the City of New York, New York County (RIBAUDO, J.), entered June 19, 1980, dismissing petitioner landlord's holdover petition and respondent's counterclaims, and which reinstated the petition and awarded possession to the landlord, should be reversed, on the law, with costs and disbursements, and the order of the Civil Court reinstated.

ROSS, MARKEWICH and FEIN, JJ., concur.

Order, Supreme Court, Appellate Term, First Department, entered on June 17, 1981, which reversed in part an order of the Civil Court of the City of New York, New York County, entered on June 19, 1980, unanimously reversed, on the law, and the order of the Civil Court reinstated. Appellant shall recover of respondent $75 costs and disbursements of this appeal.