OPINION OF THE COURT
Ira B. Harkavy, J.
Do iron bars a prison make? Petitioner landlord has commenced this proceeding to evict respondent tenants on the grounds that respondent tenants have violated the terms of their proprietary lease by installing iron bar window guards on all the windows of the respondent tenants’ apartment without the consent of the petitioner landlord. It is claimed that such action was in violation of the proprietary lease and the house rules.
Petitioner landlord is a co-operative corporation consisting of approximately 3,000 nonmultiple dwelling townhouse apartments. Respondent tenants are shareholders in the co-operative corporation holding a proprietary lease for apartment 67-H8-1.
Respondent Malti K. Balwani and her brother-in-law, respondent Rajkumar L. Balwani, took possession of apartment 67-H8-1 as proprietary lessees pursuant to a proprietary lease dated April 14, 1981. The residents of the apartment continuously since that date have been Mrs. Balwani and her husband, Kirpal L. Balwani.
*949 In August, 1981, Mr. and Mrs. Balwani had iron bar window guards installed in all the windows of their ground floor apartment, at a cost of about $800. Their decision to have the bars installed was prompted by their concern over crime and burglaries involving ground floor apartment break-ins through windows. The Balwanis frequently read of such crimes in New York City newspapers. In addition, they expected to feel more secure keeping windows open on hot summer days, when the bars would protect them from potential intruders.
The Balwanis assumed that no advance permission was needed from the co-op board because they believe that the bars are not obstructive, lie wholly within their window frames, and do not protrude into the outside air space.
The bars were installed via one-inch long holes drilled into the window frame brick. Respondents allege that the bars are readily removable, and that the small holes could be easily filled with cement mortar. The installation work poses no threat to the structure of the wall or window frame.
When the Balwanis learned in November and December, 1981 via letters from the managing agent, that the board required prior approval of the bars, Mrs. Balwani wrote back asking the board to approve the August, 1981 installation nunc pro tunc.
The board ultimately refused, and levied a $25 fine, which the respondents have persisted in refusing to pay. Respondents continue to pay their monthly maintenance charge in a timely fashion. Throughout the proceeding, up to and including June, 1982, the petitioner has accepted maintanence payments from the respondents.
The respondents’ apartment is designated as a two-family house under a certificate of occupancy issued in 1949, which is still in force. As such, the building is not subject to the Multiple Dwelling Law and its prescriptions concerning approved window guards designs. However, for other purposes, such as rent stabilization, the premises are treated as a multiple dwelling.
Paragraph 21 of the proprietary lease states “(a) The Lessee shall not, without first obtaining the written con *950 sent of the Lessor, which shall not be unreasonably withheld or delayed, make in the apartment, or the building in which the apartment is located * * * any alteration * * * or any other installation or facility”.
Paragraph 20 of the house rules reads “Owners are specifically cautioned that their right to make any addition, change or alteration to the exterior or interior of any portion of the building, including balconies, requires the written consent of the Board of Directors or the Managing Agent.”
Section 35 of the house rules reads: “A violation of these rules shall be considered a violation of the Proprietary Lease and the violator shall be subject to further action as promulgated by the Board of Directors, including but not limited to monetary fines.”
It is well established that this court has the jurisdiction to determine a summary proceeding involving a co-operative apartment. In Jimerson Housing Co. v Butler (102 Misc 2d 423, 424), the Appellate Term, Second Department, unanimously held “It is our opinion that the relationship between the petitioner, a co-operative, and respondent, its stockholder, is that off landlord and tenant to the extent that petitioner may maintain a summary proceeding against the respondent” (citing 1990 Seventh Ave. Co-op Corp. v Edwards, 133 Misc 831; Esplanade Gardens v Reed, NYLJ, May 9, 1979, p 13, col 3; Brigham Park Coop Apts, v Lieberman, Sec. 4, 158 NYS2d 135; Susskind v 1136 Tenants Corp., 43 Misc 2d 588).
Though it is clear that the installation of window bars is in contravention of both the house rules and the proprietary lease, the court must ascertain whether or not such restriction is reasonable, and if so, does it constitute a “substantial” violation of the lease. The New York courts have consistently been reluctant to compel a tenant to forfeit his leasehold where no substantial injury occurs, or where a mere technical breach of the lease is involved. (Harar Realty Corp. v Michlin & Hill, 86 AD2d 182.) In Rumiche Corp. v Eisenreich (40 NY2d 174), the Court of Appeals reversed the eviction of a rent-controlled tenant who had, on his own, installed a new sheetrock ceiling, a *951 light fixture, wallswitch, wooden closet and wooden window frame. The court held {supra, p 179) that these renovations did not constitute “waste”, as they did not affect a vital and substantial portion of the premises “ ‘as would change its characteristic appearance; the fundamental purpose of the [alteration]; or the uses contemplated, or a change of such a nature, as would affect the very realty itself, extraordinary in scope and effect, or unusual in expenditure’ ” (citing Pross v Excelsior Cleaning & Dyeing Co., 110 Misc 195, 201). As the Court of Appeals defines it, “waste” implies “permanent or lasting damage” to the reversion (Rumiche Corp. v Eisenreich, supra, p 180).
If petitioner predicates its cause of action entirely on a “waste” or “substantial violation” theory, it could hardly be contended that small holes drilled in the sides of the exterior window frames constitute a permanent injury within the perimeters of the case law. It is incumbent on the court, however, to balance other considerations.
Petitioner also sets forth the argument that respondents’ window bars constitute a fire hazard as they prohibit escape through the windows which are the secondary means of egress. Petitioner cites Fire Department Directive 2-69 (rev Nov. 4, 1981) which reads in pertinent part: “Iron bars, grills, gates or other obstructing devices on any windows giving access to fire escapes or to a required secondary means of egress shall be unlawful unless such devices are of a type approved by the Board of Standards and Appeals and are installed and maintained as prescribed.”
The respondents’ apartment is part of a two-family house under its 1949 certificate of occupancy which is still in force and effect. As such, respondent contends that the building is not subject to the Multiple Dwelling Law and its prescriptions concerning approved window bar designs. Although the subject premises are not actually a multiple dwelling, the court is of the opinion that the theory of the law is applicable at all times. If the legislative intent is to save lives, this court will not sanction the use of a fire hazard on a mere technicality.
Respondents’ next argument is that the window guards are necessary to their security and well-being as ground *952 floor residents. Respondents’ trial brief contained newspaper clippings pointing to the rising number of window break-ins in Queens and an editorial advising the securing of first floor windows. Petitioners contend that they employ a 24-hour security force to patrol the grounds of the co-op and that this security is adequate to preventing burglaries.
, Although the security of a person is of extreme importance and in some cases paramount, the court must still honor the long-established rule of freedom of contract. There is a parallel between the case at hand and the so-called “dog” case where a tenant keeps a dog for security purposes but the tenant’s lease contains a “no pet” clause. Where lease of a co-operative apartment provided for the right of re-entry upon continued violation of a house rule by lessee, one of such rules forbade harboring of animals without express permission of the lessor in each instance and lessee harbored the dog in knowing and willful violation of her obligation, neither waiver nor estoppel, allegedly arising from presence of other dogs in the building, could serve as a barrier to summary eviction proceeding. (930 Fifth Corp. v King, 40 AD2d 140.) Landlord may dispossess tenant who keeps a dog in violation of cooperative apartment house agreement. (Hilltop Vil. Co-op. No. 4 v Goldstein, 43 Misc 2d 657, affd without opn 23 AD2d 722.) It could hardly be denied that a dog would enhance a tenant’s feeling of security and well-being in an apartment, and if a dog is clean, quiet and well-behaved, then arguably a no pet restriction would be unreasonable.
Yet the courts have continually deferred the “reasonableness” to the standard of the sacredness of contracts and the right of freedom to contract, and have ordered the tenant to remove the dog. Even though the lease violation does not result in permanent injury or is not substantial, the court will not put its view before the co-op board. The court will not override the house rules and lease and impose its own standards of reasonableness. Petitioner has expressed the fear that if respondents’ window bars are allowed to remain, other tenants will follow suit and the co-op will assume a prison-like appearance. The court reserves a judgment on whether or not this is so. However, *953 this court recognizes petitioner’s right to set its own aesthetic standards.
Accordingly, judgment of possession for petitioner, warrant of eviction stayed up to and including January 1, 1983. In the event respondent removes said window bars by said time and repairs the hole made by the bars, the warrant shall not issue and the proceeding shall be terminated.