OPINION OF THE COURT
Andres J. Valdespino, J.
Petitioner landlord commenced this proceeding seeking to obtain a judgment of eviction against respondent tenant on the basis of a breach by tenant of a provision of the lease requiring the tenant to comply with all laws and regulations. A hearing on this matter was held on December 11, 2014. Subsequently counsel for the parties submitted post-hearing memoranda addressing the factual and legal issues raised in the hearing.
The most pertinent facts in this action are not disputed by the parties. The lease between the parties is dated February 27, 2007 and is for commercial premises that include a convenience store and a retail gasoline station. The lease provides that the tenant shall keep the premises “in good order, condition and repair.” The lease also provides that the tenant shall “promptly observe and comply with all laws, orders, regulations, rules, ordinances and requirements” of federal, state and local governments.
Landlord commenced this holdover proceeding after service of a termination notice, dated July 28, 2014, advising the tenant that the lease would be terminated based on the tenant’s failure to conduct proper inspections as required by law as well as engaging in fraudulent reporting of inspections required to be performed by law.
Petitioner’s proceeding is premised on respondent’s alleged violation of New York State regulations and Westchester County Code provisions requiring inspections of tanks. Petitioner specifically cites 6 NYCRR, part 613, § 613.5 (a) (2) (iii) and Westchester County Code §§ 873.2524 and 873.2516. The essential requirement of those provisions is that underground tanks need to be monitored. The Code requires maintenance of logs or physical records relating to the daily checks for inventory levels to assure that oil is not leaking from the tanks, with very detailed requirements of the information that must be recorded. The Code also requires weekly inspections of the double-walled tanks. The provisions cited by petitioner do *672 not specifically mention maintenance of written logs of the inspections of the double-walled tanks, although this would appear to be a good practice.
The testimony of both petitioner’s and respondent’s witnesses centered on the inspections of the double-walled tanks and the “interstitial monitoring wells.” As described by petitioner in its memorandum,
“on a weekly basis, the operator of the facility is required to ensure that no gasoline is leaking from the inner tank, and no water is leaking into the space through the outer wall, by utilizing a specialized stick (i.e. reader) to determine if gas or water is contained in the [annular] space between the double-walled tank.”
The parties agreed that at the inception of the lease petitioner provided the respondent with a form that would be used to note the weekly inspection. Copies of these forms, purportedly completed by respondent, were admitted into evidence.
Petitioner’s primary witnesses were petitioner’s principal, Wayne Jeffers, and Ken Gelok, owner of Petroleum Compliance Management. Mr. Jeffers testified as to the terms of the lease and the physical equipment located at the premises, including the double-walled underground storage tanks, as to which there is no dispute. Mr. Gelok testified that he was hired by petitioner to inspect the tanks and assure compliance by respondent tenant with the inspection requirements. Mr. Gelok also testified that he inspected the premises in 2013 and subsequently in June of 2014. He testified that his inspection in June of 2014 revealed that the cap to the underground tank was corroded and immoveable and he concluded that as a result the tank could not have been inspected on a weekly basis as set forth in the logs provided and maintained by respondent.
Respondent’s principal, Anthony Paul, testified that he inspected the tanks every day and recorded his findings in the logs as he had been instructed by petitioner at the commencement of the lease. He also testified that he has never been issued a violation or notice of violation related to failure to conduct tank inspections during the seven-year life of the lease, by either the State or the County. He also testified that he was able to remove the cap on the tank.
Petitioner contends that Mr. Gelok’s testimony that the cap was rusted and not moveable demonstrates, conclusively, that the tank could not have been inspected on a weekly basis. Ac *673 cordingly, petitioner concludes that the entries in the logs were false, and, accordingly, a violation of the state and county requirements that the tank be inspected on a weekly basis and a log be kept.
Respondent contends that Mr. Gelok’s conclusions cannot alone, without corroboration from a non-interested party, serve to support a finding that the respondent violated the state and county regulations relating to inspections. Respondent also contends that petitioner cannot maintain this proceeding as it did not provide respondent with a notice to cure.
As presented by the petitioner, the issue for the court to determine is whether the respondent has violated the state and county regulations requiring maintenance of logs for tank inspections. A finding of a violation of law, under the petitioner’s theory, would then compel a finding that the respondent is in breach of the provisions of the lease in which it agreed to abide by all federal, state, and local laws.
Before determining whether the respondent in fact violated a law and therefore possibly breached the lease, the court needs to determine a threshold issue — can the court in a summary proceeding make a finding that the respondent has violated a law, or state or county regulation, in the absence of such a finding by an agency or court in which the violation has been adjudicated.
Section 613.1 (f) of title 6 of the NYCRR (promulgated pursuant to article 17 of the Environmental Conservation Law) states that a person that violates the provisions of the tank inspection and testing regulations “shall be liable for the civil, administrative and criminal penalties set forth under article 71 of the Environmental Conservation Law.” Section 71-1933 (1) of the Environmental Conservation Law provides that a person who violates article 17 or the rules and regulations promulgated under article 17 may be guilty of a misdemeanor, punishable by a fine of not less than $3,750 per day or imprisonment for a term of not more than one year. Significantly, section 71-1933 (2) states that “[n]o prosecution under this section shall be instituted until after final disposition of an appeal or review” that may be available in connection with the violation.
In order to find in favor of the petitioner, this court would need to make a finding that the respondent has violated regulations, under which it could be found guilty of a misdemeanor and subject to a significant fine. The statutory and regulatory *674 scheme promulgated by the State of New York, however, does not appear to anticipate adjudication of an alleged violation of the tank inspection and records maintenance regulation within the context of a landlord tenant dispute. Certainly, the requirement that a prosecution for a violation of these regulations may not be commenced until final disposition of an administrative appeal or review would suggest that violations of the regulations should not be adjudicated outside the enforcement scheme anticipated by the Environmental Conservation Law.
There is, however, a decision that terminated a lease based on a violation of law, without a separate finding of a violation. In Mobil Oil Corp. v Burdo (69 Misc 2d 153 [Suffolk Dist Ct 1972]), the Suffolk County District Court entered a judgment of eviction for a petitioner under circumstances similar to the case before this court. The petitioner in that summary proceeding alleged that the respondent had violated state law by combining regular and premium grades of gasoline. The court found that the petitioner had proved that the respondent violated state law by combining the two grades, and that such violation of law was also a violation of the lease. The court found that the mixing of the two grades could be punishable as a misdemeanor, and that the respondent’s actions could be “a basis for further criminal action,” and found that petitioner had established the violation of law. (Id. at 156.)* Accordingly, it granted the petitioner’s request for a termination of the lease.
The result of the decision in Mobil Oil Corp. v Burdo is a finding by the court that the respondent is guilty of a misdemeanor, not in a criminal proceeding or an administrative proceeding by the regulatory authority, but within the context of a summary proceeding seeking a termination of a lease. The resultant termination and forfeiture of the lease on the basis of a finding of a violation of law appears to be draconian and contrary to law.
The Appellate Division, Second Department, in Lake Anne Realty Corp. v Sibley (154 AD2d 349, 351 [2d Dept 1989]), relied on the holding in Fly Hi Music Corp. v 645 Rest. Corp. (64 Misc 2d 302, 304 [1970], affd 71 Misc 2d 302 [App Term, 1st Dept 1972]), stating that
*675 “[t]he law abhors a forfeiture of a lease and where, as here, no substantial injury resulted to the landlord . . . , the tenant should not be unduly penalized. . . . (Ogden v. Hamer, 268 App. Div. 751; Riesenfeld, Inc. v. R-W Realty Co., 223 App. Div. 140, 148; Janks v. Central City Roofing Co., 271 App. Div. 545, 548-549) (see also, Harar Realty Corp. v Michlin & Hill, 86 AD2d 182, 185)” (internal quotation marks omitted).
As termination or forfeiture of a lease is to be avoided, particularly when there has been no evidence of injury to the landlord, a termination of a lease based on a violation of the covenant that the tenant will abide by all federal, state, and municipal laws should be based on an actual finding, by an appropriate jurisdictional body, of an actual violation of law. The statutory scheme promulgated by the Environmental Conservation Law allows enforcement through administrative and/or criminal proceedings. It does not contemplate that a finding of a violation of regulations promulgated pursuant to that law will be made in a summary proceeding, which will then be used not to impose civil or criminal penalties, but to terminate a lease. A separate independent finding of an actual violation of law could also serve as the basis to establish “injury to the landlord” which the law requires prior to the termination or forfeiture of a lease.
For these reasons, judgment is rendered for the respondent.

 The court found the violation of law “by a fair preponderance of the credible evidence.” (Id. at 155.) The court’s suggestion that the respondent could be subject to further criminal action despite basing its finding of a violation using the civil evidentiary standard of “preponderance of evidence” is problematic, and suggests further reason to require an independent finding of a violation.