**In the Matter of Frank A. DeVIER, Jr., Debtor.**

**Harriet ROSS, Plaintiff,**

**v.**

**Frank A. DeVIER, Jr., Defendant.**

**Bankruptcy No. 84–04174–B. Adv. No. 85–0154–B.**

United States Bankruptcy Court, E.D. Michigan, S.D.

Feb. 5, 1986.

---

Goldstein, Goldstein & Bershad, P.C. by Paul H. Steinberg, Southfield, Mich., for debtor.

Colombo & Colombo by Lawrence F. Raniszeski, Birmingham, Mich., for plaintiff.

## MEMORANDUM OPINION

GEORGE BRODY, Bankruptcy Judge.

This is an action instituted by a creditor to except a state court judgment from discharge pursuant to section 523(a)(6) of the Bankruptcy Code. 11 U.S.C. § 523(a)(6) (Supp. II, 1984).

Mrs. Harriet Ross owns a single family residential home in Royal Oak, Michigan. In June of 1978, she rented the home to Mr. Frank DeVier (debtor) on a month-to-month basis, and he agreed to keep the home in the same condition as it was when he rented it. Mr. DeVier vacated the home on November 27, 1980. Mrs. Ross retook possession about one week later, and subsequently filed an action in the 44th Judicial District Court of the State of Michigan against Mr. DeVier seeking damages for breach of the tenancy agreement, conversion of property, and waste of the demised premises.

At the state court trial, Mrs. Ross testified that over sixteen items of damage to the home had occurred during Mr. DeVier

and his family's tenancy. The debtor did not testify. He merely offered a statement to the court that he was not responsible for any of the alleged damages. The Circuit Court rendered a judgment for Mrs. Ross in the amount of $4,628.06 plus interest of $2,556.75 and costs of $32.00, for a total judgment of $7,216.81.

On November 27, 1984, Mr. DeVier filed a voluntary chapter 7 petition. Thereupon, Mrs. Ross filed a complaint contending that the state court judgment was nondischargeable by virtue of section 523(a)(6) of the Bankruptcy Code.

Section 523(a)(6) provides that a discharge granted pursuant to section 727 "does not discharge an individual debtor from any debt—(6) for willful and malicious injury by the debtor to another entity or to the property of another entity."

Section 523(a)(6) does not embody a new concept. It has its genesis in the Bankruptcy Act of 1898. Section 17a(2) of the Bankruptcy Act of 1898 originally provided, in part, that a discharge in bankruptcy did not release a bankrupt from provable debts that "(2) are judgments in actions ..., for willful and malicious injuries to the person or property of another." P.L. 171, 55th Cong., § 17a(2) (July 1, 1898). (Later amended by P.L. 62, 57th Cong. (Feb. 5, 1903) to state that "liabilities" for such injuries are not dischargeable.) This provision encompassed liabilities for willful and malicious conversion. E.g., *McIntyre v. Kavanaugh*, 242 U.S. 138, 141, 37 S.Ct. 38, 40, 61 L.Ed. 205 (1916). In 1970, the Bankruptcy Act was amended by P.L. 467, 91st Cong.2d Sess., and Congress placed the concepts embodied in section 17a(2) into two sections, section 17a(2) and 17a(8). (former 11 U.S.C. § 35(a)(2) and (8)). The amended section 17a(2) provided for the nondischargeability of any liability "for willful and malicious conversion of the property of another" and a new section 17a(8) excepted from discharge liabilities for willful and malicious injuries to persons or property of another, other than conversion. The 1970 amendment, however, did not change the substance of the exceptions.

The redistribution was made to accommodate the different jurisdictional treatment that was accorded to sections 17a(2) and 17a(8).[1] Section 523(a)(6) merely recombines the provisions that were separated by the 1970 amendment to the Act and adopts the language that was employed in the original Act of 1898. 124 Cong.Rec. H 11,096 (Sept. 28, 1978); S 17,413 (Oct. 6, 1978). Any attempt to determine the meaning to be accorded to the words "willful" and "malicious" in section 523(a)(6) must therefore begin with an examination of case law construing these words under the Bankruptcy Act.

The construction given to the phrase "willful and malicious" under the Bankruptcy Act of 1898, and under the Act as amended in 1970, may be summarized as follows:

> An injury to person or property may be a malicious injury within this provision if it was wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill will. The word "wilful" means nothing more than intentionally doing an act which necessarily leads to injury. Therefore, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury. (footnotes omitted.)

1A *Collier on Bankruptcy* ¶ 17.17 at 1650.4 (14th ed. 1974).

Some courts, however, held that an act that was grossly negligent or manifested a reckless indifference to the rights of others constituted a "willful and malicious" act within the meaning of section 17a. *Harrison v. Donnelly*, 153 F.2d 588 (8th Cir. 1946); *Den Haerynck v. Thompson*, 228 F.2d 72 (10th Cir.1955); *Johnston v. Irwin (In re Irwin)*, 2 Bankr.Ct.Dec. 783, 785 (Bankr.N.D.Iowa 1976); see also, *Countryman, supra*, n. 1, at 15.

Section 523(a)(6), since it is derived from sections 17a(2) and (8) of the Bankruptcy Act, is to be similarly construed. However, the legislative history accompanying section 523(a)(6) makes it clear that cases which equated grossly negligent or reckless conduct with intentional conduct are overruled. The pertinent legislative history states as follows:

> Paragraph (6) excepts debts for willful and malicious injury by the debtor to another person or to the property of another. Under this paragraph "willful" means deliberate or intentional. To the extent that *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1902 [1904]), held that a looser standard is intended, and to the extent that other cases have relied on *Tinker* to apply a "reckless disregard" standard, they are overruled.

Senate Rep. No. 989, 95th Cong., 2d Sess. (1978), 77–79 *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5865. *See also*, House Rep. No. 595, 95th Cong., 1st Sess. (1977), 363 *reprinted in* 1978 U.S. Code Cong. & Admin.News 5963, 6320.

■ Thus, for a debt to be nondischargeable under section 523(a)(6), it must be the consequence of a wrongful act which necessarily produces harm that was "done intentionally and without just cause or excuse." *Matter of Klix*, 23 B.R. 187 (Bankr.E.D.Mich.1982); *Wheeler v. Laudani (In re Laudani)*, 38 B.R. 632 (Bankr.E.D.Mich.1984); *Perkins v. Scharffe (In re Scharffe)*, 40 B.R. 942 (Bankr.E.D.Mich. 1984). A negligent act, no matter what the degree of negligence, is not a "willful and malicious" act within the meaning of section 523(a)(6). *Thatcher v. Austin (In re Austin)*, 36 B.R. 306, 309 (Bankr.M.D. Tenn.1984); *Farmers Bank v. McCloud (In re McCloud)*, 7 B.R. 819, 825 (Bankr.M.

---

1. The effect of the change pertains solely to whether or not complaints to determine their dischargeability must always be filed within the time limits of § 17c(2) and Bankruptcy Rule 409(a)(2) because the two types are treated somewhat differently, in this respect. The substance of these exceptions to the discharge, however, was not changed at all by the amendments.

1A *Collier on Bankruptcy* ¶ 17.17 at 1650.4 (14th ed. 1974). *See also* Countryman, The New Dischargeability Law, 45 Am.Bankr.L.J. 1, 27 (1971).

D.Tenn.1980); *Perkins v. Scharffe*, 40 B.R. at 945.

Before proceeding to apply this standard to determine whether the debt represented by the judgment is nondischargeable pursuant to section 523(a)(6), it is necessary to rule on the creditor's contention that the doctrine of collateral estoppel precludes this court from reexamining the facts behind the state court judgment.

"Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1978) (footnote omitted). "Collateral estoppel requires that the precise issue in the later proceedings have been raised in the prior proceeding, that the issue was actually litigated, and that the determination was necessary to the outcome." *Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir.1981); *see also, Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). It is necessary, therefore, to determine whether the precise issue involved in this dischargeability action was raised in the state court proceedings and, if so, whether that issue was actually litigated and decided.

Mrs. Ross' state court action was based on breach of contract, waste, and conversion. The court ruled that Mrs. Ross had established damages in the amount of $4,628.06 and was entitled a judgment for that amount plus interest and costs. The basis for the court's ruling was as follows:

THE COURT: Do you have any argument, Mr. DeVier?

MR. DE VIER: Well, I just say again that we had no real written contract. There was nothing to say what the condition the house was in when we moved in. I say it was no different when we moved out, than the condition when we moved in.

I think she's asking me to pay for a lot of things that were already there.

THE COURT: The problem is the Court can only rule—you may be seated Mr. DeVier. The Court can only rule on testimony before it, not on arguments presented before and after. I have to discount the arguments of both counsel and yourself. Those are only arguments. The testimony is what's key in the case, in any case. And the only testimony I've heard is Mrs. Ross' testimony as to what occurred.

On viewing the premises the plaintiff indicates that there were holes in the plaster. Hardwood floors were ruined. The fixtures were missing. The back porch was falling down. Storm windows were missing and broken.

She testified that pictures were taken. Those were introduced as Exhibit Number One. There are also a list of invoices and out-of-pocket expenses introduced as Exhibit Number Two.

The testimony is there was no damage to the premises prior to its rental. That the total price paid for these repairs was $4,628.06.

The Court having listened only to that testimony, only to the statements of the plaintiff, there being no defense presented, I have no alternative but to issue a judgment in the amount sought, that being $4,628.06, plus costs in the amount of a $20 filing fee, a $10 officer's fee, for a total costs in the amount of $30, plus a $2 judgment fee, for a total judgment in the amount of $4,658.06. The Court will sign an order upon presentment.

An order reflecting the court's ruling was entered on November 7, 1984. In pertinent part, the order states:

[I]n accordance with this court's opinion [from the bench, see above], Plaintiff Harriet Ross shall recover a judgment from Defendant Frank DeVier in the amount of $4,628.06 for damages herein, plus interest pursuant to MSA 26A.6013 from the date of filing of Plaintiff's Complaint to November 1, 1984 in the amount of $2,556.75, together with costs in the amount of $32.00 representing the filing fee, the court officer's fee and the judgment fee for a total judgment of $7,216.81.

The difficulty with the creditor's position that the doctrine of collateral estoppel should be applied in this case lies in the fact that it is impossible to determine upon what cause or causes of action the judgment was based—whether it was based upon breach of contract, waste, or conversion. *Cooke v. Plaisted,* 181 Mass. 82, 62 N.E. 1054 (1902). A finding that the debtor's conduct was willful and malicious was not a prerequisite to the entry of the judgment. Willful and malicious conduct is not an essential element of a breach of contract action. *Cadillac Vending Co. v. Haynes,* 19 B.R. 849; 9 Bankr.Ct.Dec. (CRR) 226, (Bankr.E.D.Mich.1982). Waste is defined as:

> An abuse or destructive use of property by one in rightful possession. Spoil or destruction, done or permitted to lands, houses, gardens, trees, or other corporeal hereditaments, by the tenants thereof, to the prejudice of the heir, or of him in reversion or remainder. A destruction or material alteration or deterioration of the freehold, or of the improvements forming a material part thereof, by any person rightfully in possession, but who has not the fee title or the full estate. An unreasonable or improper use, abuse, mismanagement, or omission of duty touching real estate by one rightfully in possession, which results in its substantial injury. Any unlawful act or omission of duty on the part of the tenant which results in its substantial injury. Any unlawful act or omission of duty on the part of the tenant which results in permanent injury to the inheritance. It is the violation of an obligation to treat the premises in such manner that no harm be done to them, and that the estate may revert to those having an underlying interest, undeteriorated by any willful or negligent acts.

*Black's Law Dictionary* (Rev. 4th Ed. 1968). Intentional and malicious conduct is not a *sine qua non* for an action based on waste. A judgment for waste may be predicated on negligence. *Granger University Avenue Corp. v. First State Insurance Company,* 99 A.D.2d 1022, 473 N.Y. S.2d 813 (1984); *Rumiche Corp. v. Eisenr-*

*eich,* 40 N.Y.2d 174, 386 N.Y.S.2d 208, 210–211, 352 N.E.2d 125, 127–28 (1976); *accord, Bresnahan v. Hicks,* 260 Mich. 32, 35, 244 N.W. 218 (1932). Conversion, if it is the result of willful and malicious conduct, is nondischargeable under section 523(a)(6). *Barclays American/Business Credit, Inc. v. Long (In re Long),* 774 F.2d 875 (8th Cir.1985); *First National Bank of Red Bud v. Kimzey (In re Kimzey),* 761 F.2d 421, 424 (7th Cir.1985); *Impulsora Del Territorio Sur v. Cecchini (In re Cecchini),* 772 F.2d 1493, 1496 (9th Cir.1985); *accord, Miller v. Held (In re Held),* 734 F.2d 628 (11th Cir.1984). However, there is nothing in the state court record to suggest that the judgment was based on conversion. Since the court did not make any finding that any of the alleged items of damage were caused by the willful and malicious conduct of the debtor, and since such findings were not a prerequisite to the entry of the judgment, the doctrine of collateral estoppel does not apply. It is necessary, therefore, for this court to determine whether all or any of the items of alleged damage were caused by the "willful and malicious" conduct of the debtor. Accordingly, a hearing will be scheduled to make this determination.