In re Denver RIDGWAY, Debtor.

Cristopher Wurm, Plaintiff,

v.

Denver Ridgway, Defendant.

Nos. 99–3188, 99–32168.

United States Bankruptcy Court,
N.D. Ohio.

Jan. 8, 2001.

L. Scottt Helkowski, Wauseon, OH, for plaintiff.

Edward L. Snyder, Holland, OH, for defendant.

Elliot H. Feit, Toledo, OH, for debtor.

## DECISION AND ORDER

RICHARD L. SPEER, Chief Judge.

In the above captioned adversary complaint, the Plaintiff, Cristopher Wurm, seeks to have a debt owed to him by the Defendant, Denver Ridgway, held nondischargeable. The underlying debt at issue stems from a default judgment the Plaintiff obtained against the Defendant in the amount of Twenty-four Thousand Two Hundred Nineteen and 48/100 dollars ($24,219.48). The legal basis for this debt was (1) the Defendant's breach of a land installment contract, and (2) the supposed damages caused by the Defendant to the property subject to the land contract. For purposes of this adversary proceeding, the statutory authority upon which the Plaintiff relies for his cause of action is 11 U.S.C. § 523(a)(6) which excepts from the scope of a bankruptcy discharge any debt which arises as the result of a debtor's willful and malicious conduct.

Originally on this matter, the Defendant filed a motion for summary judgment. The Court, however, after considering the arguments raised therein, and after setting forth in its Opinion the relevant background facts of this case (which for brevity's sake will not be repeated here), denied the Defendant's Motion on the basis that genuine issues of material fact exist as to whether the Defendant acted willfully and maliciously for purposes of 11 U.S.C. § 523(a)(6). As a consequence, on September 21, 2000, the Court conducted a Trial on this matter, at which time the Parties were afforded the opportunity to present evidence in support of their respective positions. The Court has now considered this evidence and, in accordance with Bankruptcy Rule 7052, finds that the following accurately depicts the relevant facts of this case.

In August of 1997, the Plaintiff and the Defendant entered into a land installment contract for the purchase of building located in Montpelier, Ohio. The purchase price for the building was Forty Thousand dollars ($40,000.00). The terms of the Parties' agreement provided that, in addition to paying the building's property taxes, the Defendant would pay to the Plaintiff Four Hundred Five and 70/100 dollars ($405.70) per month for a period of three (3) years after which time the remaining amount still owing on the land installment contract would become fully due. At the time the Defendant purchased the property from the Plaintiff, it is clear that the property, although not in a complete state of disrepair, needed some serious improvements. Specifically, the evidence in this case shows that the building, at the time the Parties executed the land installment contract, suffered from problems such as, a leaky roof, pest problems (e.g., rats, cockroaches), flooding in the basement, and warped tiles on the floor.

The actual property at issue in this case is a two-story building with a basement. The upstairs part of the building is comprised of a single-unit apartment. The downstairs part of the building, including the basement, is set up for commercial purposes and, for a number of years, has been run as a pet store. Sometime around the beginning of 1997, the Plaintiff purchased this property, and the business operating therefrom, for Sixty-one Thousand dollars ($61,000.00); of this amount, Forty-five Thousand dollars ($45,000.00) was allocated for the cost of the building while the remaining Sixteen Thousand dollars ($16,000.00) was allocated for business inventory. Upon purchasing the property, the Plaintiff continued to operate a pet shop

from the property, the same also being true for the Defendant. While the owner of the property, the Plaintiff made some minor improvements to the building.

Immediately following the Defendant's purchase of the building, the Defendant made payments to the Plaintiff in accordance with the Parties' agreement. However, after a relatively short period of time, the Defendant's payments became irregular, until finally, in July of 1998, the Defendant, for reason which are not entirely clear, informed the Plaintiff that he was no longer going to make payments to the Plaintiff in accordance with the Parties' agreement. In addition, around this same time, the Defendant stopped altogether paying taxes on the building as was required under the terms of the Parties' land installment contract.

Not long after ceasing payments to the Plaintiff, the Defendant physically vacated the premises. During the period of time following this event, the evidence presented in this case unquestionably shows that the Defendant did not in any way cooperate in restoring the Plaintiff to possession of the premises. In fact, it is clear that the Defendant not only failed to cooperate, but actually impeded the Plaintiff's efforts to regain possession of his property. In particular, the evidence presented in this case shows that: (1) the Plaintiff had to go through a forcible entry and detainer action to gain possession of the building despite the fact that the Defendant intended to vacate the premises; (2) the Defendant refused to accept service of this action, and thus the Plaintiff, having to pursue alternative means of service, was delayed in his efforts to regain possession of the building; and (3) after gaining legal possession of the premises, the Defendant, for no apparent reason, refused to give the Plaintiff the keys to the building, which delayed even further the Plaintiff being able to regain possession of his property.

As a result of the foregoing events, it took the Plaintiff approximately three (3) months—commencing from the time the Defendant ceased making payments under the Parties' agreement—to gain physical possession of the apartment building. Furthermore, upon gaining physical possession of the building, the Plaintiff found the condition of the building to be as this: The basement had approximately eight (8) inches of water in it as the result of plumbing problems and the fact that the Defendant had not permitted the water to be turned off; other general water damage had been caused by the leaking roof; some dead animals were laying around; ceiling tiles were scattered all over the place; the upstairs apartment, having no tenant, was in a state of disarray; air-conditioning units were damaged; and excessive debris was left in both the building and in the rear alleyway portion of the building. To remedy the damage which existed to the building, the Plaintiff obtained an estimate to fully restore the premises. This estimate calculated that cost to be Twenty Thousand One Hundred Forty-seven and 62/100 dollars ($20,147.62), of which amount, Thirteen Thousand One Hundred Sixty-eight and 38/100 dollars ($13,168.38) was attributable to labor costs, while the remaining costs were designated for materials. These repairs, however, were never completed, and soon after obtaining the estimate, the Plaintiff listed the property for sale at a price of Fifteen Thousand dollars ($15,000.00). The Plaintiff, however, eventually accepted an offer for the building in "as is" condition for Thirteen Thousand Five Hundred dollars ($13,-500.00).

## LEGAL ANALYSIS

■ With regards to the above facts, the single issue presented for the Court to

resolve is whether such facts support a finding that the Defendant's debt is non-dischargeable for purposes of 11 U.S.C. § 523(a)(6). This section provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> > (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

For purposes of § 523(a)(6), the terms "willful" and "malicious" are separate and distinct concepts, and as a result, both requirements, as defined by federal law,[1] must be established to have a debt held nondischargeable under 11 U.S.C. § 523(a)(6). *Sielschott v. Reimer (In re Reimer)*, 182 B.R. 816, 818 (Bankr. E.D.Mo.1995).

■ Under federal law, a willful injury occurs when a person acts with the intent to cause injury, or is substantially certain that an injury will occur. *Gonzalez v. Moffit*, 252 B.R. 916 (6th Cir. BAP 2000); *Hinze v. Robinson (In re Robinson)*, 242 B.R. 380 (Bankr.N.D.Ohio 1999). A malicious injury on the other hand can be defined, for purposes of § 523(a)(6), as that conduct which is done without just cause or excuse, or for which there is no reasonable justification. *Grange Mutual Casualty Co. v. Chapman (In re Chapman)*, 228 B.R. 899, 909 (Bankr.N.D.Ohio 1998). With respect to these statutory definitions, it is the Plaintiff's duty, as the party contesting the dischargeability of the debt, to establish his compliance with these requirements by a preponderance of the evidence. *O'Brien v. Sintobin (In re Sintobin)*, 253 B.R. 826, 829 (Bankr.N.D.Ohio 2000).

■ With regards to the above statutory requirements, the Court first notes that at the time the Plaintiff entered into the land installment contact with the Defendant, the building subject to the contract was clearly not in very good shape. In fact, the condition of the building could be, at best, categorized as fair. However, from the above stated facts, it is also clearly evident that the Defendant, even accounting for normal wear and tear, did not return the building to the Plaintiff in the condition that he had originally received it. For purposes of Ohio law then, the Defendant can be said to be guilty of committing waste to the property, with Ohio law defining waste as an "abuse or destructive use of property by one in rightful possession." *Woodrick v. Wood*, 1994 WL 236287 *2 (Ohio Ct.App. 8th Dist.); *Arzt v. Search*, 1932 WL 1730 *2 (Ohio Ct.App. 4th Dist.); *see also Malone v. Malone*, 1999 WL 314195 *2 (Ohio Ct.App. 7th Dist.) (defining waste as an "action or inaction by a possessor of land causing unreasonable injury to the holders of other estates in the same land."). A judgment for waste, however, may be predicated upon less than a person's intentional conduct. For example, a person who negligently fails to repair a premise may be found liable for waste. *Reams v. Henney*, 88 Ohio App. 409, 410, 97 N.E.2d 37, 38 (Ohio Ct.App. 1950) (under Ohio law, waste may be permissive, as opposed to voluntary, which means that type of waste which "arises from the neglect, omission, sufferance, or permission of the tenant in failing to preserve or protect the estate of inheritance."). Thus, although waste may be indicative and used to support a cause of action under § 523(a)(6), a person's willful and malicious conduct is not a sine qua non for an action based upon waste. *See, e.g.,*

---

**1.** Proceedings brought pursuant to 11 U.S.C. § 523(a)(6) are defined under 11 U.S.C. § 157(b)(2)(I) as core proceedings over which this Court has jurisdiction.

858

In re DeVier, *57 B.R. 602 (Bankr. E.D.Mich.1986) (willful and malicious conduct is not a sine qua non for an action based on waste);* Magee v. Phillipps (In re Phillipps), *54 B.R. 273, 277 (Bankr.D.Col. 1985) (waste as the result of the heat turned off, water in the house then freezing, and the pipes bursting cannot be characterized as deliberate or intentional injury for purposes of 11 U.S.C. § 523(a)(6));* Mathes v. Woolner (In re Woolner), *109 B.R. 250, 254 (Bankr.E.D.Mich.1990) (mere neglect of property which causes a diminution in value is not willful or malicious for purposes of 11 U.S.C. § 523(a)(6)).*

■ In conformance with this principle, and after considering that the building sold to the Defendant was in less than pristine condition, the Court does not find that adequate evidence exists in this case to establish that the entire judgment obtained against Defendant is nondischargeable under § 523(a)(6). Along this same line, the Court is also not persuaded that the entire "estimate" the Plaintiff received to fully restore the premises should be held nondischargeable. However, as previously pointed out, it is this Court's position that the Defendant both actively and passively impeded the Defendant's ability to gain repossession of his property. In this Court's judgment, such actions (or inactions) clearly constitute an intentional deprivation of another's use of their property. As such, any damages arising therefrom would satisfy the willful and malicious requirement of 11 U.S.C. § 523(a)(6). *Accord Kaufhold v. Cauthen (In re Cauthen),* 152 B.R. 149, 153 (Bankr.S.D.Tex. 1993); *see also In re Ricketts,* 40 B.R. 676, 678 (Bankr.Md.1984) (to knowingly and wrongfully deprive one of possession of their property creates a debt which is nondischargeable under 11 U.S.C. § 523(a)(6) as a willful and malicious injury caused by the debtor). For purposes of this case, this means that all those damages which were incurred by the Plaintiff after the Defendant could have reasonably turned over possession of the property, and until the Plaintiff could actually enter the property, will be held to be a nondischargeable debt in accordance with 11 U.S.C. § 523(a)(6). The Court finds such damages, in this case, to be as follows:

| $ 414.44 | Three months worth of back property taxes |
| --- | --- |
| $1,217.10 | Three months worth of payments on the land installment contract |
| $ 53.88 | Landfill charges for trash removal |
| $ 100.00 | Ten (10) hours of labor @ $10.00 per hour for general clean up and trash removal |
| $2,500.00 | Estimated damage sustained to the building as the result of it sitting empty for three months (e.g., water damage, bursts pipes, dead animals, damaged ceiling tiles, etc . . .) |

$4,285.42  Total Nondischargeable Debt

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that pursuant to 11 U.S.C. § 523(a)(6), the Plaintiff, Cristopher Wurm, be, and is hereby, found to hold a nondischargeable debt in the amount of Four Thousand Two Hundred Eighty-five and 42/100 dollars ($4,285.42) against the Defendant, Denver Ridgway.

It is **FURTHER ORDERED** that judgment be, and is hereby, granted in favor of the Plaintiff, Cristopher Wurm, and against the Defendant, Denver Ridgway,

in the amount of Four Thousand Two Hundred Eighty-five and 42/100 dollars ($4,285.42), and that the Plaintiff be awarded interest thereon at the rate of 10% per annum commencing from the date of the entry of this Order.