Judi Anne McMAHON

v.

Vincent Iheke EKE–NWEKE.

No. 06–CV–5762 (JBW).

United States District Court,
E.D. New York.

Aug. 31, 2007.

Michael Zilberg, Certain & Zilberg,
PLLC, Gary Todd Certain, The Certain

Law Firm, PLLC, New York, NY, for Judi Anne McMahon.

Vincent I. Eke–Nweke, Law Office of Vincent I. Eke–Nweke, P.C., Brooklyn, NY, pro se.

MEMORANDUM & ORDER

WEINSTEIN, Senior District Judge.

## Table of Contents

I. Introduction ................................................. 601

II. Facts ...................................................... 601

III. Law ....................................................... 603
 A. Standard of Review ..................................... 603
 B. Unconscionability ...................................... 603
 C. Breach of Fiduciary Duty ............................... 604
 D. Affirmative Waste ...................................... 604
 E. Laches ................................................ 605
 F. Request for Trial by Jury .............................. 605
 G. Request for Attorney's Fees ............................ 605

IV. Application of Law to Facts ................................ 605
 A. Unconscionability ...................................... 605
 B. Breach of Fiduciary Duty ............................... 606
 C. Affirmative Waste ...................................... 607
 D. Laches ................................................ 607
 E. Request for Trial by Jury .............................. 607
 F. Request for Attorney's Fees ............................ 608
 G. Request for Monetary Damages ........................... 608

V. Conclusion ................................................. 608

## I. Introduction

Plaintiff, through counsel, alleges that defendant, who was her attorney, (1) entered into an unconscionable lease agreement with her for an apartment he now occupies; (2) breached his fiduciary duty to her; and (3) has through affirmative acts done significant harm to the premises.

Defendant, *pro se*, moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. His grounds are 1) plaintiff's first two claims raise pure questions of law regarding whether the lease agreement was proper at the time it was executed and that the terms of the lease, as a matter of law, were fair and equitable and did not result from any misconduct and 2) the evidence is in-disputable that no damage has been done to the premises.

Defendant also asserts that summary judgment in his favor is appropriate because 1) plaintiff ratified the lease agreement, 2) that plaintiff's claims are barred by the doctrine of laches and 3) the claim for monetary damages is time barred. Finally, Defendant moves to strike plaintiff's request for a jury trial and attorney's expenses.

Plaintiff established that there are genuine issues of material fact as to all causes of action. Defendant's motion is denied.

## II. Facts

Defendant is an attorney admitted to practice law in the State of New York.

(Def.'s Aff. Ex., A ¶ 13). Over a six-year period ranging from 1997 to 2003 the defendant represented the plaintiff in a defamation action, a personal injury action, a property damage action, a false arrest action, business matters and an investigation of an estate dispute. (*Id.* ¶ 35). The defendant has also drafted codicils for the plaintiff's will, was once designated the executor of the plaintiff's will and was named as a beneficiary of $10,000 in prior versions of the will. (*Id.;* Def. Dep. pp. 66–69).

Plaintiff has a Bachelor of fine Arts Degree from Hunter College; she studied to be a paralegal at Baruch College; she has also been employed at two law firms as a paralegal; she is a published author; and has her own line of holistic skin care products. (*Id.* ¶¶ 1–9). She owns a residence at 248 Todt Hill Road, Staten Island, New York.

In April 2001, plaintiff, as lessor, and defendant, as lessee, entered into a written lease agreement. Except for the ground level plaintiff leased the premises to defendant for a three-year term commencing September 1, 2001 and ending on August 31, 2004. The lease contained an option to purchase the entire premises. (Def.'s Aff., Ex. B). There is no evidence that the defendant advised the plaintiff to seek legal counsel until an August 2004 email discussing the lease term extension. (Def.'s Dep. pp. 110–112).

The lease permitted the defendant to occupy the second floor for $1,500 per month beginning September 1, 2001, with the monthly rent to increase to $1,800 per month beginning June 1, 2003, when the then current ground level tenant was to vacate and defendant would assume control of the entire building. It contained a three-year option to buy the building for $400,000; the option to purchase com-

menced on September 1, 2001. (Def.'s Aff., Ex. B).

A renewal clause stated that should the lessor [plaintiff]

> have any liability with respect to the outstanding principal amount on the mortgage ... between Lessor, as Mortgagor, and Arthur B. Brown, as Mortgagee, then, and in that event, the lease term granted herein shall be renewed, without any rental increase, for an additional period of Two (2) years starting from September 1, 2004, or until such a time that lessor shall have no further liability with respect to the said principal amount. There shall be no increase in the rental payments during any such renewal period.

The option to purchase, provided:

> [i]n the event that as of June 30, 2004, the lessor shall have any liability with respect to the outstanding principal amount on the Mortgage ... between Lessor, as Mortgagor, and Arthur B. Brown, as mortgagee, then, and in that event, the option to purchase granted herein shall be extended or renewed for an additional period of Two (2) years starting from September 1, 2004, or until such a time that lessor shall have no further liability with respect to the said principal amount. The purchase price during any such extension or renewal shall be Four Hundred Thousand Dollars (400,000.00).

(Def.'s Aff., Ex. B).

The mortgage has never been satisfied. It is apparently to be cancelled at the death of the mortgagee, now 100 years old. (Statements of counsel at hearing of August 30, 2007, *see* transcript).

Between 2001, when the lease with option to purchase was signed, and 2007, the New York Department of Finance estimates of market value indicate that the

property increased in value from $258,000 to $498,700. In April 2001 the market value of the premises as appraised by defendant's expert witness was $ 360,000. (Def.'s Aff., Ex N).

It is plaintiff's view that defendant has allowed the premise garden to deteriorate. Defendant strenuously denies this contention and some evidence to support this position was presented at the hearing on this motion. *See* transcript of hearing on August 30, 2007.

## III. LAW

### A. Standard of Review

A motion for summary judgment is appropriate when it is clear that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of establishing that no genuine issue of material fact exists. Fed. R.Civ.P. 56(c). Facts must be construed in the light most favorable to the nonmoving party, and issues resolved with all ambiguities and all reasonable inferences construed against the movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party opposing the motion must make a showing sufficient to establish any essential element for which it will bear the burden of proof at trial. *See Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. *See also Mei–Lun Chen v. N.Y. City Transit Auth.,* 2003 WL 22125227, at *4, 2003 U.S. Dist. LEXIS 16016, 10–11 (E.D.N.Y.2003).

### B. Unconscionability

Unconscionability "has been employed by courts to deny enforcement to harsh and unreasonable contract terms. An unconscionable bargain is one which no man in his senses and not under delusion would make on the one hand, and ... no honest and fair man would accept on the other." *Doctor's Associates, Inc. v. Jabush,* 89 F.3d 109, 113 (2d Cir.1996) (internal citations omitted). "The doctrine was forged to 'protect[ ] against unfair bargains and unfair bargaining practices. Unconscionability is determined by reference to the relative benefit of the bargain to the parties at the time of its making, the nature of the methods employed in negotiating it, and the relative bargaining power of the parties.' " *Id.* (quoting *United States v. Bedford Assocs.,* 657 F.2d 1300, 1312–13 (2d Cir.1981)).

"[A]n unconscionable contract has been defined as one which is so grossly unreasonable as to be unenforceable because of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *See King v. Fox,* 7 N.Y.3d 181, 191, 818 N.Y.S.2d 833, 851 N.E.2d 1184(N.Y.2006) (internal citations omitted). All the circumstances surrounding the contract must be considered, including whether each party had a reasonable opportunity to understand the terms of the contract, whether deceptive tactics were employed, the use of fine print, and disparities in education, experience and bargaining power. *See Gillman v. Chase Manhattan Bank, N.A.,* 73 N.Y.2d 1, 537 N.Y.S.2d 787, 534 N.E.2d 824, 828 (1988).

If a contract is unconscionable it is voidable; but it can be ratified. *King v. Fox,* 7 N.Y.3d at 191, 818 N.Y.S.2d 833, 851 N.E.2d 1184. The New York Court of Appeals has held, in answering a certified question from the Court of Appeals for the Second Circuit, that an unconscionable contract between an attorney and his client can be ratified by the client. "Ratification may occur at any time, so long as a

client has full knowledge of the relevant facts (including the terms of the agreement and the choice to disavow it) and has acquiesced. The fact that the agreement's terms may be more advantageous to the attorney does not change the result." *King v. Fox*, 7 N.Y.3d at 191, 818 N.Y.S.2d 833, 851 N.E.2d 1184. "Because of the special protections given to clients in dealing with their attorneys, it will be a rare case where an unconscionable agreement may be ratified by the client . . . Where a fully informed client with equal bargaining power knowingly and voluntarily affirms . . . ratification can occur." *Id.* at 193, 818 N.Y.S.2d 833, 851 N.E.2d 1184.

### C. Breach of Fiduciary Duty

As a general rule, an attorney must ensure that a client has obtained independent legal counsel before entering into a transaction with the client. The New York Lawyer's Code of Professional Responsibility DR 5–104(a), codified in New York State as Section 1200.23(a) of the Disciplinary Rules states,

Transactions between lawyer and client

(a) A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise professional judgment therein for the protection of the client, unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner that can be reasonably understood by the client;

(2) the lawyer advises the client to seek the advice of independent counsel in the transaction; and

(3) the client consents in writing, after full disclosure, to the terms of the

transaction and to the lawyer's inherent conflict of interest in the transaction. 22 N.Y. ADC 1200.23(a).

The Code of Professional Responsibility defines differing interests to "include every interest that will adversely affect either the judgment or the loyalty of a lawyer to a client, whether it be a conflicting, inconsistent, diverse, or other interest." 22 N.Y. ADC 1200.1(a).

A fiduciary relationship exists between an attorney and his client. Therefore, a transaction between a lawyer and his client will be regarded with suspicion. Once the plaintiff has provided evidence to establish an attorney-client relationship at the time contract was entered into, the execution of the contract and evidence from which it might be inferred that the client acted without independent advice, the burden is on the defendant to establish that the contract was fair and well understood by client. *See generally, In Re Howell*, 215 N.Y. 466, 109 N.E. 572 (N.Y.1915); *Radin v. Opperman*, 64 A.D.2d 820, 407 N.Y.S.2d 303 (4th Dept. 1978); *Frost v. Bachman*, 259 A.D. 745, 18 N.Y.S.2d 702 (2d Dept.1940).

### D. Affirmative Waste

Affirmative waste occurs when a tenant injures the premises by an affirmative act. "Affirmative waste as a concept stems from early English common law concern that the interests in land held by reversioners or remaindermen be protected from depredations by life tenants . . . It is the impingement upon the ultimate estate of the landlord which is the keynote to the definition of waste." *Rumiche Corp. v. Eisenreich*, 40 N.Y.2d 174, 179, 386 N.Y.S.2d 208, 352 N.E.2d 125 (N.Y.1976).

The New York Court of Appeals in applying the concept to a modern landlord-tenant setting has defined affirmative

waste as "such a change as to affect a vital and substantial portion of the premises; as would change its characteristic appearance; the fundamental purpose of the erection; or the uses contemplated, or a change of such a nature, as would affect the very realty itself, extraordinary in scope and effect, or unusual in expenditure." *Id.*

Allowing a valuable garden to deteriorate because of neglect could be considered waste, if the leasee had an obligation to keep it in good repair.

### E. Laches

 "Generally, neglect to assert promptly a claim for relief, if such neglect causes prejudice to the adverse party, operates as a bar to the remedy and as a basis for invoking the doctrine of laches." *Dwyer v. Mazzola,* 171 A.D.2d 726, 727, 567 N.Y.S.2d 281 (2d Dept.1991) (internal citations omitted). The four basic elements of laches are, (1) conduct by an offending party giving rise to the situation complained of, (2) delay by the complainant asserting his or her claim for relief despite the opportunity to do so, (3) lack of knowledge or notice on the part of the offending party that the complainant would assert his or her claim for relief, and (4) injury or prejudice to the offending party in the event that relief is accorded the complainant. *Id.* (internal citations omitted).

### F. Request for Trial by Jury

 "The Seventh Amendment preserves the right to trial by jury for suits at common law, not in equity." *Germain v. Connecticut Nat. Bank,* 988 F.2d 1323 (2d Cir.1993). Equitable actions do not require a jury trial and no right to a jury attaches to claims for equitable relief. *CSC Holdings, Inc. v. Westchester Terrace at Crisfield Condominium,* 235 F.Supp.2d 243 (S.D.N.Y.2002). The standard test is to determine first whether the action would have been deemed legal or equitable in 18th century England, and second whether the remedy sought is legal or equitable in nature. The court must balance the two, giving greater weight to the latter. *See Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 42, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989).

Both parties waived any right to a trial by jury. *See* transcript of hearing on August 30, 2007.

### G. Request for Attorneys' Fees

 Under New York law the general rule is "attorneys' fees and disbursements are incidents of litigation and the prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties or by statute or court rule." *Matter of A.G. Ship Maintenance Corp. v. Lezak,* 69 N.Y.2d 1, 5, 511 N.Y.S.2d 216, 503 N.E.2d 681 (N.Y. 1986) (citing *City of Buffalo v. J. W. Clement Co.,* 28 N.Y.2d 241, 262–263, 321 N.Y.S.2d 345, 269 N.E.2d 895 (N.Y.1971); *Mighty Midgets v. Centennial Ins. Co.,* 47 N.Y.2d 12, 21–22, 416 N.Y.S.2d 559, 389 N.E.2d 1080 (N.Y.1979)).

## IV. Application

### A. Unconscionability

 Unconscionability is determined by reference to the terms of the contract as well by looking at how the contract was formed. The nature of the negotiations between the parties and their relative bargaining power must be taken into account.

 The contract in this case could be construed as unreasonably one sided. The terms are such that it could reasonably be read to give the defendant a right to lease the premises without any rental increase until such time as the plaintiff or the hold-

er of plaintiff's mortgage were deceased. The option to purchase could reasonably be read to give the defendant the right to purchase the premises at a fixed price almost indefinitely without regard to the fair market value of the property.

While plaintiff may be an educated business woman, she is not an attorney and was not represented by one during these negotiations. She is not as versed as defendant in drafting and understanding the operative provisions of a lease or option to purchase. The lease terms are drafted in a way that even the defendant, who drafted the document, admits that it "may have been inelegantly drafted," that the language used was "probably not the best way to draft it," and that the document was worded in such a way that "even though [he] could [exercise the option to purchase at any time] pursuant to the terms of the contract that was not the parties intention." (Def. Dep. pp. 107–109).

A lay plaintiff cannot be expected to understand a document that even the drafter admits is poorly drafted. There is a disparity in bargaining power when an attorney bargains with an unrepresented client, especially where the terms of the contract are so ambiguous that they may not accurately represent the intentions of the parties.

Defendant has not established that the plaintiff ratified the contract. While ratification of an unconscionable agreement between an attorney and his client may occur if the client acquiesces with full knowledge of the terms of the agreement as well as the right to disavow it, given the ambiguity of the contract and the fact that the plaintiff was unrepresented it cannot be said that the plaintiff understood the terms of the contract or her right to disavow it.

There is a genuine issue of material fact as to whether the plaintiff had a reasonable opportunity to understand the terms of the contract. The defendant's motion for summary judgment is denied with respect to plaintiff's unconscionability claim.

**B. Breach of Fiduciary Duty**

The New York Lawyer's Code of Professional Responsibility DR 5–104(a) applies to situations where the attorney and his client have differing interests and the client expects the lawyer to exercise professional judgment therein for the protection of the client. In the present case defendant represented plaintiff over an extended period of time in numerous matters. The time frame during which he represented the plaintiff includes 2001 when the lease was entered into. Given that 1) the plaintiff was unrepresented during the negotiation of lease and 2) there was a current attorney client relationship between the defendant and the plaintiff at the time the lease was entered into. There is at the very least a question of fact as to whether plaintiff expected defendant to exercise professional judgment for her protection regarding the lease agreement.

The disciplinary rule requires that an attorney entering into a covered business transaction with a client meet three requirements: (1) the terms must be fair and reasonable and transmitted in a writing that can be reasonably understood by the client; (2) the client must be advised to seek outside counsel and (3) the client must give written consent to both the transaction and the conflict of interest after a full disclosure. In the present case the defendant failed to meet any of these requirements.

The terms of the contract can be construed in a manner which renders them unreasonably one-sided. In addition, it is

essentially conceded by the defendant in his deposition testimony that the terms were not transmitted in a writing that plaintiff could reasonably understand. The contract is worded so ambiguously as to allow what defendant admits was never intended by the parties. (Def. Dep. pp. 107–109).

As to the second requirement, plaintiff contends that defendant never suggested that she seek the advice of independent counsel. While defendant asserts that he did advise plaintiff to seek counsel the only evidence to this effect is an email sent to plaintiff long after the contract was signed and defendant was in possession of the property in connection with the lease renewal (Def. Dep. pp. 110–12).

As to the third requirement there is no evidence that there was ever a full disclosure to plaintiff regarding the defendant's "inherent conflict of interest in this transaction," and defendant has produced no written consent signed by the plaintiff.

 "The crucial question is whether the defendant attorney established that the contract was made by the client with full knowledge of all material circumstances known to the attorney, and was in every respect free from fraud ... and that a reasonable use was made by the attorney of the confidence reposed in him." *Howard v. Murray*, 38 N.Y.2d 695, 699, 382 N.Y.S.2d 470, 346 N.E.2d 238 (N.Y.1976)(internal citations omitted). In the present case there is a question of fact as to whether the plaintiff was fully informed of all the material circumstances. In addition, given the defendant's possible violation of disciplinary rule 5–104(A) it cannot be said as a matter of law that there was no breach of fiduciary duty.

The defendant's motion for summary judgment is denied with respect to plaintiff's claimed breach of fiduciary duty.

### C. Affirmative Waste

 While an appraisal report, prepared for the plaintiff, dated March 15, 2007, lists the premises as "in overall good condition (Interior = Excellent; Exterior = Average)," (Def.'s Aff., Ex. SSS), plaintiff will submit an affidavit to the court outlining damage to the grounds around the premises. *See* transcript of hearing held on August 30, 2007. She contends that the defendant has allowed the garden to fall into serious disrepair.

There is a triable issue of fact as to whether the alleged damage, if any, to the garden is sufficient to constitute waste. The defendant's motion for summary judgment is denied with respect to plaintiff's claim for affirmative waste.

### D. Laches

 A party asserting the equitable defense of laches must establish plaintiff's unreasonable lack of diligence under the circumstances in initiating an action in order to establish the second necessary element. Here the defendant has not established when the plaintiff became aware of her cause of action. While defendant asserts that plaintiff was aware of the alleged breach of fiduciary duty by July 2001, he has provided no supporting evidence. Since it is the defendant's burden to show unreasonable delay on the part the plaintiff and defendant has failed to do so plaintiff's claims are not barred.

### E. Request for Trial by Jury

 Plaintiff's first and second causes of action claiming unconscionability and breach of fiduciary duty, respectively, are equitable in nature. *See In re Evangelist*, 760 F.2d 27, 29, 31 (1st Cir.1985); *Page Mill Asset Mgmt. v. Credit Suisse First Boston Corp.*, 2001 WL 863552 (S.D.N.Y. 2001) The main relief sought by the plain-

608

tiff, declaratory judgment, granting of full possessory interest in the premises to plaintiff and an order of ejectment are also equitable in nature. Because counts one and two are equitable, the plaintiff has no constitutional right to a jury trial. Plaintiff's jury demand is stricken as to counts one and two. Plaintiff and defendant have waived their right to a jury trial with regard to count three. *See* transcript of hearing on August 30, 2007.

### F. Request for Attorneys' Fees

There is no evidence in the record which suggests that the parties have an agreement which authorizes the award of attorneys' fee. Plaintiff has not attempted to demonstrate that she is entitled to recover attorneys' fees by statute or court rule. Plaintiff's request for attorneys' fees is stricken.

### G. Request for Monetary Damages

Defendant contends that plaintiff's claims for monetary damages are barred by the statute of limitations. Since the plaintiff asserts that her request for monetary damages is predicated on her claim for affirmative waste in the garden as it is now being maintained, the statute of limitations does not apply.

### V. Conclusion

Defendant's motion for summary judgment is denied.

**SO ORDERED.**